Millard L. Midonick, J.
This memorandum is written for the purpose of extending the use of payroll deduction orders directed to employers for the support of wives and children of their employees.
This court is frequently faced by the undesirable alternatives of compelling a defaulting husband and father to comply with an order of support by committing him to jail forthwith (Family Ct. Act, § 454); by suspending such order of commitment on condition that the respondent post cash bond or other security and comply in the future (Family Ct. Act, § 455); by ordering probation for respondent under conditions of posting cash bond or other security, and by ordering commitment to jail for violation of conditions of probation (Family Ct. Act, §§ 454, 456); by requiring an undertaking with sufficient surety approved by the court, and for the want of sufficient security, committing the respondent to jail (Family Ct. Act, §§ 471, 479).
All alternatives to payroll deduction orders which result in jail commitments, are undesirable because of:
1. The adverse effect of confinement itself upon the respondent and his family.
2. The burden thrown upon the taxpayer of supporting the respondent’s dependents while he is unable to earn money.
3. The relative uncertainty of continuing compliance by respondent even if a Workhouse term is threatened.
The threat of confinement is in a substantial number of cases quite ineffective to control defaulting respondents because of personality inadequacies which manifest themselves in such overindulgence in alcohol, gambling, and other pursuits involving excessive spending, as to leave their dependents destitute.
The remedy of choice in many cases has been found to be the rechanneling of respondent’s pay at the payroll source, receiving directly from the employer such moneys in the Support Bureau *789 of the court, and paying over such funds to the dependents, under section 49-b of the Personal Property Law.
The use by this court of such payroll deduction orders and wage assignments has been curtailed because of the reluctance of the court to give employers a motive to discharge or lay off the employee respondent.
Testimony of such employees has revealed, however, that a large proportion of the ones who appear before this court in New York City are protected against unwarranted employer reprisals by labor union contracts and such finding can be expressly made as part of each order for the following reasons which are too lengthy to set out in each order:
1. Collective labor agreements, almost without exception, contain binding arbitration clauses.
2. Collective labor agreements, almost without exception, contain the provision in substance or in so many exact words, that no employee shall be discharged except for “good cause ” or “ just cause”, on pain of arbitration of a grievance which, if upheld, subjects the employer to an arbitrator’s enforeible and nonappealable award directing inevitable reinstatement and almost invariable back pay.
3. Any retailiation whatever against any respondent employee protected by such a standard labor agreement clause, merely because of a payroll deduction order is generally held by an arbitrator not to be sufficient cause for discipline of any kind, and the employer would foresee being faced with a grievance brought by the union, the result of which would be costly reinstatement with back pay. This is usually the plight of the employer who with perhaps some justification attempts to discharge as a “ nuisance ” an improvident or financially disorganized employee who is subjected to a multiplicity of garnishees. (Cf. Stone, “Labor-Management Contracts at Work ”, Harper’s, 1961, pp. 228, 229; American Machine & Foundry Corp. and United Automobile Workers, 17 Amer. Arbitration Assn. Rep. 6; Watkins and Jewelry Int. Union, 14 L A 787; Borg-Warner and United Automobile Workers, 14 L A 745.) No such reported decision favoring the employer has been found.
The present case is illustrative of most of the facets of this problem.
On August, 6, 1962 this matter, which has been active in this court for three years, came on for a hearing on allegations that the respondent father was $383 in arrears under an order of $19 per week plus $1 per week on arrears, for the support of his three children.
*790 The history of the proceeding indicates that respondent had been before this court in former hearings on 14 occasions since the inception of the case on August 8, 1959. Each hearing involved a complaint by the petitioning wife and mother of nonsupport of respondent’s children, born June 5, 1954, August 12, 1946 and November 16, 1947. Because of reluctance to endanger the employee’s job, prior to the August 6, 1962 wage assignment herein, none of the 14 previous hearings had resulted in invoicing the 1958 law authorizing wage deductions (L. 1958, ch. 659, enacting Personal Property Law, § 49-b).
In a case such as that now here, where a payroll deduction order does not run because the employer is situated in the State of New Jersey, a wage assignment by the employee respondent can be required.
This employee consented to and promptly made such assignment, and “ So ordered” was indorsed by the court. In the event of refusal by an employee to make a wage assignment on his out-of-State employer, the court can require such regularization of support by means of conditional suspended sentence, or probation on such condition. Such condition can be written in such a way as to protect an employee until five days after first default by the employer. The employee respondent is thus placed in the position that if he should quit or countermand his wage assignment (and in the case of a New York employer, if the employee should quit after a court payroll deduction order), the employee is subject to the revocation, for good cause shown, of the suspension of the order of commitment to jail (Family Ct. Act, § 455), or the revocation of probation, where circumstances warrant it, and resulting commitment to jail (Family Ct. Act, §§ 456, 454, subd. [a]).
The practice of asking employer approval of a payroll deduction order by a probation officer seems to result in triggering disapproval. While it may be of value in nonunion plants, the practice of making such an inquiry of a union employer is counterindieated.
The benefits from thus assuring a steady support directly from the employer wage source, whether it be a wage order directed to a New York State employer or a wage assignment directed to an out-of-State employer, are several: (a) unreliable employee respondents are no longer summoned into this court repeatedly, thus saving the time and effort of our judicial and nonjudieial personnel in unnecessary hearings; (b) wives and children dependent on court orders for the necessities of life are not repeatedly subjected to deprivation and uncertainty; *791 (c) large sums in public welfare funds will be saved annually if such respondents are thus successfully required to support their dependents, using this appropriate remedy rather than the relatively clumsy method of civil jail, which can cost the husband his job and the taxpayers the financial burden of the family unit.
In almost all cases, an employer covered by union contract will comply with such a court order, but in the instant case, as soon as the court-indorsed wage assignment made by the respondent reached his New Jersey employer the bookkeeper wrote to the probation officer of the court that the employee had been advised to take care of the matter himself, and that if he failed to do so he would be dismissed because the employer lacked “ the bookkeeping facilities ” to take care of a weeldy check for nonsupport.
The probation officer was advised by the court to write to the employer, insisting upon compliance for reasons of (a) the welfare of the employee’s children and (b) tax saving of Federal as well as State and city funds, and (c) union arbitration sanctions as cited earlier in this opinion.
To this letter the treasurer of the employer responded by again declining to comply and threatening discharge on the ground that this employer was “ snowed under ” with wage assignments for commercial garnishees, that the respondent employee had given assurances of his own “ faithful ” compliance, and that their particular agreement with the union provided that wage assignment would be just cause for discharge.
To this, the probation department responded that an inspection of the said labor agreement showed no such clause permitting discharge, that the respondent was weekly falling behind in his payments, and that the labor union involved had written that it would pursue its remedies to support the order “ especially because it concerns the family unit The employer was advised that its position was thus unsound and detrimental to (a) the public interest (b) the employee’s interest and (c) the employer’s own interest.
A happy solution was thereafter reported to this court. The employer proceeded to pay the entire $20 per week regularly for the support of these three children out of the wages of the respondent employee thus resolving this problem.
We now turn to a separate aspect of this problem: the fact that in the instant case $1 of the $20 per week is for “ arrears ”. Two Justices in the Supreme Court of this State have held that said section 49-b of the Personal Property Law is not intended *792 by our Legislature to apply to arrears (Langus v. Langus, 16 Misc 2d 648 [1959]; De Jongh v. De Jongh, 13 Misc 2d 882 [1958]).
There is no reason for such interpretation of this statute. The Judges of this court have been for years making payroll deduction orders for arrears as well as for current support, although this would appear to be the first reported opinion to this effect. Of course this court exercises a reasonable restraint by making small weekly inroads upon arrears rather than by lump sum payroll deductions. In this case, by consent of respondent, the wage assignment involved $19 per week for current support plus $1 per week for reduction of arrears.
The language of the statute (Personal Property Law, § 49-b, subd. 1) permits such wage orders to the extent of “ such amounts as the court may find to be necessary to comply with its order for the support ”. Such an order of support was here involved, inasmuch as the arrears had accrued by reason of violation and noneompliance with the order of support in the past, and there is no reason whatsoever why the employer should not pay the arrears weekly or monthly, as well as maintaining current payments out of current earnings of the employee.
Before turning to proposed improvements in this statute, its actual terms should be understood in more detail.
The payroll deduction order is made by any court of record, under chapter 659 of the Laws of 1958 (Personal Property Law, § 49-b). Such payroll deduction order, or an assignment of wages in compliance with a support order, takes priority over other assignment or garnishment of wages. The court may order the employer “to deduct from such employee’s wages, salary and/or commissions such amounts as the court may find to be necessary to comply with its order for the support of the employee’s minor children and/or his or her spouse. Such employer shall deduct the amount as ordered from the wages, salary and/or commissions of the employee and forward it monthly as directed in the order.” (Personal Property Law, § 49-b, subd. 1.) No limitations of percentage regulating garnishments restrict these payroll orders or wage assignments (Personal Property Law, § 49-b, subd. 2).
The problem of desirable clarifications and enlargement of the scope of this payroll-deduction-for-dependents law is worthy of considerable reflection.
Whether such clarification can stem in part from judicial interruption is of interest. There is some speculation, never tested, that an employment in the State of New York is, even under the present wording of the statute, protected from reprisal *793 in the event of a payroll deduction order. The statute commands that “ When a person is ordered by a court of record * * * to pay for the support of his minor children and/or spouse * * * the court may order his employer to deduct ”, etc., and “ Such employer shall deduct the amount as ordered from the wages, salary and/or commissions of the employee and forward it monthly as directed in the order. ’ ’ (Personal Property Law, § 49-b, subd. 1.)
It is arguable that reprisals against an employee solely because of the statutory command would subject the employer to liability to the dependents to the extent that the employer itself has by its own willful act undermined and eliminated the wages from which the employer is ordered to make the periodic deductions. Surely, such would be the interpretation if by a cruder form of evasion or subterfuge the employer were to eliminate all or too much of the customary monetary ‘ ‘ wages, salary and/or commissions ” in favor of paying the employee respondent in kind, or on a deferred basis, with the connivance of the respondent.
But if an employer could, with impunity under the present wording of the law, discharge or lay off the employee solely because of a payroll deduction order, it would seem that the Legislature should consider with favor the plugging of this loophole. This suggestion is made to the Legislature with respect and with diffidence. On rare occasions, it would seem to he the proper function of a judicial opinion to invite the attention of lawmakers to an improvement revealed to the eye of one observing at close hand the vagaries and needs in the application of the laws.
See the informative discussion by Judge Stanley H. Fuld of the New York Court of Appeals in the June, 1962 issue of the Columbia Law Review (62 Col. L. Rev., 923).
Should the Legislature wish to consider favorably such a hill, section 49-b of the Personal Property Law might well be amended to add a new paragraph 3 to the end thereof, to read as follows:
“3. It shall be unlawful for an employer to discharge, lay off or otherwise discipline or -impair the earnings of an employee against whom a valid payroll deduction order or wage assignment made or approved by a court of record of the state of New York, is filed, solely because of such filing. Such an employer shall remain responsible for such valid payroll deduction order or wage assignment so made or approved by such court of record, as though such employee had not been so discharged, laid off or otherwise disciplined and his earnings not so impaired.”
*794 While it might be easier to enforce by administrative procedure if such employer reprisal were made an employer unfair labor practice under the Labor Law as well, the jurisdiction of the New York State Labor Relations Board is severely limited to intra-State employers, and the vast Federally-covered range of New York State employers would be unaffected.
Such an amendment as quoted above would cover employees not now protected against discharge by union collective labor contracts with employers and employees left to fend for themselves by the occasional labor union which cannot or will not protect its members from this hazard.
Further, it would seem to be mutually desirable for neighbor States, indeed for all States including our own, to adopt uniform legislation in reciprocal assistance of one another with respect to such payroll deduction orders and wage assignments. Such uniform legislation is notably successful in respect to the Uniform Support of Dependents Law (Domestic Relations Law, art. 3-A, §§ 30-43). By this legislation all of our States and territories and possessions will enforce for their sister States against a husband or relative residing in the responding State, and in behalf of dependents residing in a petitioning State, the legitimate claims for support presented by the petitioning States. The new State-wide Family Court has exclusive jurisdiction in proceedings in New York State under the said Uniform Support of Dependents Law. (Family Ct. Act, § 411.) Such legislation in each State can make enforcible, via employer payroll deduction orders in responding States, the legitimate claims of petitioning States and also make unlawful any reprisals against employees for such orders originating in sister States. The present situation depends for effectiveness between States, as in the present case, on a wage assignment in one State which the employer located in a responding State must honor because of labor union co-operation by enforcement under a collective labor contract with the employer.
The problem of payroll deduction orders also affects publicly employed respondents.
When the employee is employed by the City of New York or by the State of New York, the policy is always and automatically favorable to the payroll deduction order made by this court and no problem arises.
Contrariwise, when the employee is employed by the civilian branch of the Federal Government, a payroll deduction order in behalf of dependents is given no more consideration than is given a garnishee for an ordinary commercial debt. This policy is pursued despite the adverse effect upon the nation’s financial *795 resources caused by the unreliability of the very Federal civil employees who are paid out of tax moneys. Such an unwarranted state of affairs should be rectified by an Executive Order of the President of the United States, or by any other necessary legal implementation, so that the policy of the United States will conform to the more desirable policy of the City and State of New York.
There seems to be no difficulty in this area with the armed forces of the United States, the problem being substantially limited to the civilian branches. Commanding officers, as a matter of ordinary rule of practice, will voluntarily respect any reasonable suggestion of a responsible Judge. The protection of the welfare of dependents of armed forces personnel has always engaged the watchful attention of their commanding officers, and the family allotment is forthcoming for legitimate purposes upon advising the commanding officer of the problem and the facts. The civilian government employer has no such authority in view of the rigid blanket policy of the United States Government against any wage deductions whether or not for good purposes.
On the least one recent occasion, a payroll deduction order directed to a great banking institution located in this metropolis was rejected. No collective labor agreement protected the employees involved, and the bank as a matter of course advised that the man would lose his job unless the order were vacated. Such a problem may be solved informally by voluntary agreement of the banks of this State with the Superintendent of Banks and indeed by the insurance institutions with the Superintendent of Insurance.