Millard L. Midonick, J.
The problem of each of these cases is typical of a welter of others daily being heard and heard again in the Family Court of the State of New York. Involved *901 is the resolution of conflicting orders of two different courts directed to the employer of the respondent husband and father. One order is a payroll deduction order made by this court of record (or by the Supreme Court) for support of wife and/or children, under the authority of section 49-b of the Personal Property Law; the other is an income execution under CPLR 5231 (subd. [e]), known as a garnishment under the predecessor section 684 of the Civil Practice Act and still one of the many garnishments under CPLR 105 (subd. [h]) as explained by commentary under CPLR 5201 in McKinney’s Consolidated Laws of New York (Book 7B, CPLR, p. 25) directed to the same employer by a judgment creditor with a commercial or tort claim against the same husband and father, as an employee.
Simultaneously in 1961, two courts in this State took opposite views of the meaning of section 49-b of the Personal Property Law in respect to whether the payroll deduction order for the support of the family shall be exclusive, or whether instead the employer shall be required to deduct concurrently both the support payroll deduction ordered by this court (or by the Supreme Court in a matrimonial proceeding), and the 10% of wages in satisfaction of the garnishment.
In Loan Serv. Corp. v. Bridgeport Lbr. Co. (27 Misc 2d 938 [Supreme Ct. Onondaga County, April 25, 1961], affd. unanimously without opn. 14 A D 2d 827 [4th Dept., Oct. 19, 1961]), the prior payroll deduction order for $35 a week under section 49-b of the Personal Property Law for the support of the employee’s minor children, was held not to preclude a 10% deduction of wages in addition, to satisfy a wage assignment given to a lending company simultaneously with the employee’s borrowing $500. The Supreme Court reasoned that granting exclusive effect to a family support payroll deduction order under the “priority” provision of section 49-b of the Personal Property Law would render the employee’s wages immune from the garnishments of judgment creditors for possibly years or at least an undetermined period while the family support payroll deduction order continued in effect. The court asserted that “Such a situation also very possibly could result in collusion between spouses ” (27 Misc 2d 938, 939).
The Appellate Term, Second Department, came to a different conclusion in Feder v. Skyway Container Corp. (218 N. Y. S. 2d 362 [June 19, 1961]). There it held that the prior payroll deduction order for a wife and children of an employee made under section 49-b of the Personal Property Law prevented *902 the concurrent effectuation of a later garnishment by a judgment creditor of the same employee under section 684 of the Civil Practice Act (now CPLR 5231, subd. [e]). The Appellate Term reasoned on the basis of the history of the" legislation and its express provision that such a payroll deduction order for support of the employee’s minor children or spouses “ takes priority over any other assignment or garnishment of wages, salary and/or commissions * * * but does not invalidate any existing valid wage or salary assignment in effect at the time this act takes effect.” (Personal Property Law, § 49-b, as added by L. 1958, ch. 659, eff. April 12,1958.)
The recorded legislative history on section 49-b of the Personal Property Law, although not specific on the conflict with garnishments, indicates the importance of the purpose behind the 1958 law. The statement of Hon. Victor B. Wylegala, Judge of Erie County Children’s Court, indicates that section 49-b was to serve two purposes: ‘ ‘ first, it would insure regularity of payments, thereby reducing welfare expenditures which otherwise subsidize such families; and, second, this plan will reduce to a great degree the caseload of our probation departments because at present such cases make up their largest caseload.” (Memorandum of Committee on Legislation of New York State Association of Children’s Court Judges, N. Y. State Legis. Annual, 1958, p. 6.)
It would seem that the Appellate Term, Second Department, is correct in holding that the word ‘ ‘ priority ’ ’ and the word “ invalidate ” must mean that a payroll deduction order for the support of the dependents is (at least prima facie) exclusive, despite subsequent assignments or garnishments. Indeed, I was persuaded in this case to go further than the Appellate Term, and instructed the employer of the respondent father in the Beahm case herein to suspend even the prior garnishment while this payroll deduction order for support of wife and children remains in effect, thereby giving the support deduction the statutory “priority”. Thus the garnishment in the Beahm case, faced with a later family support involuntary payroll deduction order, is dropped a notch in the ladder of priority as though another wage garnishment liad the status of priority in time. This holding is in accord with the dictum of the Appellate Term in that the family support payroll deduction order “is always entitled to priority”. (Feder v. Skyway Container Corp., 218 N. Y. S. 2d 362, 364, supra.)
Since the statute grants priority to payroll deduction orders for family support without any time limitation, and speaks *903 of not invalidating only assignments in effect at the time the act took effect, it would seem that the Legislature intended that even a later support payroll deduction order prima facie supersedes or temporarily suspends a prior garnishment. Such an interpretation would, of course, not bar a court of competent jurisdiction from making an affirmative ruling, under statutory authority, to reinstate and enforce the garnishment through concurrent deductions. Had the Legislature intended concurrent deductions to be the prima facie consequence of such two deductions, in the absence of such an affirmative action, such words as “notwithstanding a garnishment” would have expressed such a concept in section 49-b of the Personal Property Law rather than the words used: “takes priority over any other * * * garnishment.”
The sole contrary argument which provides the only other possible meaning for the word “priority” consistent with two concurrent deductions as a matter of course, leads to an unreasonable result which cannot have been the intention of the Legislature. Thus, if “ priority ” were to mean effectively only that more than 90% of the respondent’s wages must be deducted for support of his dependents, before the remaining 10% wage garnishment were to be curtailed, then one envisages the entire deprivation from such a man of all of his earnings. Such an inhumane and unworkable result seems outside the pale of legislative intention. We are compelled therefore to fall back upon the meaning of “priority” as first in time, thereby excluding wage garnishments and assignments during the enforcement of the favored support deduction, unless and until an affirmative judicial order establishes the propriety of two concurrent deductions. This is the same exclusivity given any wage garnishment having priority in time, only one being permitted to operate contemporaneously.
The tendency to avoid harsh income executions is illustrated in the 1964 ruling of the County Court of Westchester, where the new provisions of CPLR 5240 and CPLR 5231 (subd. [g]) were successfully invoked by a judgment debtor to reduce (rather than a judgment creditor to increase) the 10% income execution to 5% to avoid undue burden upon a net income of $200 per month for a family of four. This result was reached without the involvement of a support payroll deduction order. (First Westchester Nat. Bank v. Lewis, 42 Misc 2d 1007.) Viewed in the light of this typical problem of reducing 10% to 5%, one might anticipate an occasional judicial increase, but not a legislative preoccupation and intention, in using the *904 word “ priority ” in section 49-b of the Personal Property Law, with concurrent income deductions approaching 100%.
If it be argued that credit will be unreasonably curtailed for wage earners in the lower brackets whose property holdings are too meager to satisfy a Sheriff’s or a Marshal’s levy, there are considerations which outweigh these supposed disadvantages. First, our Legislature seems to have set the policy of support, prima facie, before credit. Next, the credit .systems appear to operate well enough in Texas, North Carolina, Pennsylvania and in other States where no wage garnishments are permitted, under any circumstances whatever. Thirdly, the careful extending of credit, even without conditional sale, for such necessaries as “household furniture ”, will give the judgment creditor a right to levy and apply such items as he sold to the satisfaction of money judgment for those very items. (CPLR 5205 [subd. (a), par. 5].) Fourthly, while section 49-b of the Personal Property Law provides an unequivocal prima facie “priority” suspending and blocking a 10% wage garnishment, in favor of a support payroll deduction order, the exemption of the remaining 90% of the current earnings of a judgment debtor is qualified expressly by the clause found in CPLR 5205 (subd. [e]): “except .such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents ”.[1] Such exception was also in effect in 1958 when section 49-b of the Personal Property Law was enacted. (See McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 5205 [subd. (e)], Legislative Studies and Reports, p. 47.) As the Court of Appeals has said in an analogous blending of separate statutory provisions, sometimes statutes must “be read together ” in order “ to carry out the total statutory policy ”. (Morris Plan Ind. Bank of N. Y. v. Gunning, 295 N. Y. 324, 331.)
In the Beahm case, the compliance of the employer will result in the wife’s being taken off the rolls of the Welfare Department for the first time in years. In the Squires case, Welfare Department assistance will be substantially reduced. The Beahm judgment creditor, who has taken a calculated risk in extending credit to an $80 per week wage earner with a wife to support, and children to support in two different homes, will be able to repossess a $700 refrigeration system which the respondent husband and father had improvidently purchased and which is the substantial producing cause of the garnishment. If the judgment creditor continues to refuse to *905 repossess its conditionally sold property, that is its privilege, but it cannot be held that the public welfare funds and the wife and children of the respondent should continue to suffer deprivation in order to vindicate a risk which the seller took on the infirm basis of the questionable credit of the buyer.
I am satisfied and find, that there is no collusion between this wife and husband who are the parties in the Beahm case, because they are permanently estranged, and he is more interested in supporting the persons, minor and adult, living in a separate household with him.
If collusion between litigating spouses occasionally appears, the Legislature evidently has on balance left the courts to fend against collusion only where in fact it is found. Indeed, if collusion were on a debtor’s (husband’s) mind, it would seem simple enough to “ create ” a collusive creditor by permitting a friend to take a default judgment against him and then to garnish a full 10% portion of his wages and thereby to defeat for an indefinite time the rights of all other creditors later in time and, indeed, also to defeat pro tanto the adverse spouse and children.
Whether or not collusion may exist, the legislative scheme under section 793 of the Civil Practice Act and CPLR 5240, 5231 (subd. [g]), 5226 and 5221 clearly gives to a creditor the right to move in a court of competent jurisdiction for reasonable relief, e.g., double or concurrent wage deduction.
While it is not necessary to find so in the Beahm or Squires cases, it is frequently observed by the triers of fact in matrimonial matters, that estranged and bitter husbands living apart from their wives, are apt to scheme against rather than to conspire with their wives, by rendering themselves subject to garnishment and other levies. There is considerably more danger of a self-indulgent stratagem by the rejecting or rejected husband, stripping himself of part or all of the means for support of an estranged wife, than of a pretense of estrangement while actually in collusion with the wife who is suing him for support while living separately.
The problem involved here is to analyze and, hopefully, to reconcile fairly, the complicated and conflicting interests of at least five quite separate elements of the community:
1. The interests of the wife in her own support and in the support of her children.
2. The interests of the husband in what remains of his earnings for his own living needs, and also for the support of his wife and children.
*906 3. The interests of judgment creditors in the collection of their debts despite claims for support by the debtor’s family.
4. The interests of society in the prevention of deprivation to the children, the wife and the husband.
5. The interests of society in minimizing the payment of public moneys through the Department of Welfare. In the great majority of cases which appear in this court showing conflicting problems of family support and judgment debt, the Department of Welfare is supporting in whole or in part the deprived wife and children.
While it would be vain to try to reconcile the language of the two conflicting opinions cited above, the actual holdings of each may not be irreconcilable. In the four proceedings herein, chosen almost at random from the stream of cases of this sort constantly being heard in the Family Court, the facts persuade me in two of them, Bellia and Lloyd, to permit concurrent (a) payroll deductions for family support and (b) wage garnishment by judgment creditor, and in the remaining two to give prima facie priority or exclusive effect, even to a later family support payroll deduction. Such prima facie exclusive priority for the family support payroll deduction orders causes the garnishment to be suspended while the support deduction continues, until and unless the judgment creditor can obtain relief, in a special proceeding in the Supreme Court, County Court, Civil Court or other appropriate court specified in CPLR 5221, extending the enforcement procedure under CPLR 5240, 5231 (subd. [g]) and 5226 beyond the 10% limitation on wage garnishment or income execution upon wages, under CPLR 5231 (subd. [e]) and 5205 (subd. [e], par. 2), which 10% and more the support deduction has already pre-empted. Thus, CPLR 5240 permits ‘ ‘ The court * * * at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require [to] make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.” (Emphasis supplied.) (Cf. commentary by Professor David D. Siegel, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR, 5221, p. 73.)
The effect of giving prima facie priority to some support deductions, until the judgment creditor rather than the judgment debtor can apply for relief, is contrary to the approach of the distinguished reporter for CPLR, Professor Jack B. Weinstein and his fellow authors. In volume 6, New York Civil Practice (1964), paragraph 5231.29, the authors Weinstein, Korn and Miller suggest that ‘1A possible accommodation *907 would be to permit both the involuntary wage assignment [i.e., the family support payroll deduction order] and the income execution [garnishment of wages for judgment debt] to operate simultaneously subject to the judgment debtor’s right to seek modification of the income execution when the combined effect of the two deductions would be too burdensome * * * In this way, a wealthy judgment debtor would not be able to immunize his income from an execution by having an order under section 49-b [of the Personal Property Law] issued against him.”
For many reasons, a case-by-case approach, even in the initial treatment of the conflict in the Family Court, seems the sounder approach to this problem. The prima facie effect of a family support payroll deduction order ought to be exclusive until the Family Court or another court of competent jurisdiction gives concurrent effect to both payroll deduction and income execution. With rare exceptions, judgment debtors being sued by their wives for support are not “wealthy”. The median net income of respondents before the Family Court is approximately $80 weekly. When garnished, about $10 weekly is deducted by the first of several creditors. A concurrent payroll deduction for support of wife and children leaves the man needing judicial relief. To suggest that such a man can afford to employ counsel or even to take time off to seek relief from a double wage encroachment, is to be unrealistic. He is also lacking in motivation to do so since, if the Family Court be kind enough to leave him enough income to exist Avhile so moving for relief, he can foresee only a larger family support payroll deduction order as the result of his success. If the Family Court is not kindly disposed, and deducts from his pay without regard to the garnishment, the respondent is often left without a minimum for his needs, and may become motivated to quit his job to avoid the impossible situation.
The judgment creditor, on the other hand, is usually able to apply in an appropriate court for an order directing that the garnishment shall be deducted concurrently with the family support payroll deduction. If the judgment debtor is truly “wealthy”, it should be demonstrable by the judgment creditor; a large income is an easy beginning. (CPLR 5240, 5231 [subd. (g)], 5226, 5221, 5205 [subd. (e)].)
There is no express language according support deductions “priority” as to publicly employed persons (Family Ct. Act, § 459 and CPLR 5231 [subd. (f)]), unless section *908 49-b of the Personal Property Law covers both private and public “ employer”. It is so held in the Lloyd case to which this opinion applies; while the current garnishment was there permitted to continue concurrently by express directive, the order further provided that no future garnishments were to be honored by the public employer while the support deduction continues in effect unless a court of competent jurisdiction will have directed a concurrent deduction.
The social and economic strengths of payroll deduction orders for support, relative to the justifiable subordination, deferment or suspension of income executions in payment of ordinary judgments, are further illustrated by the history of these remedies throughout the United States. At common law, an execution upon or garnishment of the judgment debtor’s current income was unknown (Rowland Hardware & Supply Co v. Lewis, 173 N. C. 290; Cornelius v. Albertson, 244 N. C. 265). And to this day, some States prohibit garnishment of current wages in any amount whatever. For example, it is provided in Vernon’s Civil Statutes of the State of Texas, Ann. (vol. 12A [1960], art. 4099): “No current wages for personal service shall be subject to garnishment; and where it appears upon the trial that the garnishee [employer] is indebted to the defendant [employee — father and husband] for such current wages, the garnishee shall nevertheless be discharged as to such indebtedness.” The Constitution of Texas provides in section 28 of article 16: “ No current wages for personal services shall ever be subject to garnishment.” Again the General Statutes of North Carolina (1953) in section 1-362 provide: “ Debtor’s property ordered sold.— The court or judge may order any property, whether subject or not to be sold under execution (except the homestead and personal property exemptions of the judgment debtor), in the hands of the judgment debtor or of any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment; except that the earnings of the debtor for his personal services, at any time within sixty days next preceding this order, cannot be so applied when it appears, by the debtor’s affidavit or otherwise, that these earnings are necessary for the use of a family supported wholly or partly by his labor.” In Goodwin v. Claytor (137 N. C. 224) re N. C. Code, § 493 [now § 1-362] the court held such earnings of current wages coming due to debtors, to be absolutely protected from seizure in garnishment.
*909 It is clear that improvident credit is not encouraged by such States as Texas and North Carolina.[2] Prospective creditors in such jurisdictions are restricted to property to which the prospective debtor has title or will have title — not to current earnings for personal services. If valuable property is not available for attachment or levy, or the character or record of the debtor is not sound as indicated by his credit rating apart from his bare earnings position, one must question whether the risk of credit is assumed providently and in good faith. Many employers have firm policies of discharge upon garnishment; many families have gone on welfare because the provider has paid the judgment creditor and deprived his dependents in order to save his job. "When a family support payroll deduction is involved, on the other hand, with a little explanatory effort by the probation department and sometimes even by the judge, few employers will discharge a man for that. (Doe v. Doe, 37 Misc 2d 788.) Once a payroll deduction order is in effect, prospective garnishers who should never have extended credit based on such in terrorem considerations, are and should be deprived of the access to garnishment unless a court of competent jurisdiction adds garnishment to support deduction. Many families are thus saved from deprivation or break-up, and the rest of the community is protected from resulting drain upon the taxpayers through welfare payments.
The State of New York has not enacted laws of the Texas — North Carolina — Pennsylvania type to protect current earnings of the wage earner, but instead allows garnishment of 10% of such wages. (Civ Prac. Act, §§ 784, 792, subd. [c]; CPLR 5205 [subd. (e), par. 2] and 5231 [subds. [e], [f].) However, after creating this remedy for judgment creditors, in derogation not only of the common law but of the current support of a judgment debtor’s legal dependents, our Legislature carefully adopted in 1958 section 49-b of the Personal Property Law the intermediate position as to the availability to judgment creditors of even 10% of current wages for personal services, by providing that such garnishment shall not be available if there is a court imposed payroll deduction order for the support of the judgment debtor’s dependents, unless expressly so permitted by a judicial determination.
In the context of some other States not permitting under any circumstances even with court approval, any incursion *910 on current wages by garnishment for judgment creditors, it becomes doubly reasonable to interpret the language of the New York Legislature in the several statutes applicable here, in order to afford the courts more flexibility. In a most engaging essay on jurisprudence, Charles P. Curtis, Esquire, has put it well in “ A Better Theory of Legal Interpretation ” in Jurisprudence in Action (Baker Voorhis & Co., Inc., 1953, pp. 135, 152) where he urges us “to recognize the equally admirable properties of selective and adjustable inexactitude. Then we shall be free to substitute for what the orthodox theory of interpretation calls the intention of the legislature * * * the application of the words by the person, whoever it may be, to whom the words were addressed and to whom the power of applying them was delegated. The vaguer they are, the more imprecise they are, the greater the delegation. Inside, well on the inside, of the area of their meaning there will be little or no doubt or obscurity or even disagreement. But along the margin, up and down and around the boundary, in the chiaroscuro of the penumbra, ‘ here in the skirts of the forest, like a fringe upon a petticoat ’ (As You Like It, III, 2) there will be doubt of the correctness of the application.” And on page 169: “If the meaning of legal documents were to be made as precise as lawyers have been brought up to believe it should be, our trade, or commerce, all our affairs, would have to choose between law and living. What we admire in legal draftsmanship is not precision. It is a precisely appropriate degree of imprecision.”[3]
Applying these precisely appropriate imprecisions of the Civil Practice Act, CPLR and section 49-b of the Personal Property Law, the holdings of the Supreme Court and the Fourth Department in the Loan Service case (supra) as well as that of the Appellate Term, Second Department, in the Feder case (supra) are each appropriate under varying circumstances. Similarly, the categorical advice of the learned authors, Weinstein, Korn and Miller, (supra) that prima facie in all cases, both amounts are deductible until the judgment debtor moves for relief on notice to the judgment creditor, is only sometimes appropriate.
Despite the array of categorical dicta, in order that justice in each individual case shall continue to be the goal of the Trial Judge under all known circumstances, these multi-interest *911 problems have been, and should be, approached flexibly as follows:
(A) In the first instance in the Family Court (or in a Supreme Court matrimonial matter) the support order, if enforced by a payroll deduction order, suspends any garnishment by income execution.
(B) At the very moment of making such a support payroll deduction order against a husband or father, factors may appear even in the absence of the judgment creditor which persuade the Family Court Judge (or Supreme Court Justice) to instruct the employer of the husband or father not to suspend the garnishment. In such cases, the judgment creditor is protected in absentia. The Family Court’s authority so to protect, while it does not derive from CPLR 5221, is implicit in its power to stay this aspect of its imposition and application of section 49-b of Personal Property Law. Thus prior to the enactment of the Civil Practice Act and CPLR general provisions as to stays, the Appellate Division, First Department, did give it as a general dictum that the “ inherent power of the court to stay proceedings or control the trial of an action is one which must be exercised in the action itself”. (Belasco Co. v. Klaw, 98 App. Div. 74, 75 [1904].) CPLR 2201 replaced without change of substance section 167 of the Civil Practice Act, granting a general authorization to courts to grant stays in actions pending before them, in a proper case upon just terms. Such stays under CPLR 2201 do not necessarily involve another action between the same parties (wife and husband here; husband and judgment creditor in the other proceeding), but have always been considerably more flexible. (2 Weinstein-Korn-Miller, op. cit., supra, par. 2201.03.) A stay is particularly appropriate to prevent litigation of an issue which should more appropriately be litigated in another proceeding, because the judgment creditor may appear to protect himself and there the Supreme Court, County Court or Civil Court may finally determine issues in favor of either judgment creditor or judgment debtor which the Family Court may not. (Cf. Matter of Huntington, 14 A D 2d 312 [1st Dept., 1961].) It would seem appropriate and suitable thus to use the CPLR 2201 stay, as provided by section 165 of the Family Court Act.
Therefore in the Bellia and Lloyd cases herein, the respondent’s employer has been ordered to deduct support under section 49-b of the Personal Property Law, and to continue to deduct the garnishment theretofore being deducted, by virtue of a stay of the otherwise automatic suspension under section 49-b of the existing garnishment, unless and until a court of compe *912 tent jurisdiction may affirmatively suspend said garnishment in a special proceeding brought by respondent or his employer (the garnishee) on notice to said judgment creditor.
(C) If the Family Court does not find the need to act affirmatively to protect the absent judgment creditor but allows the prima facie operation of section 49-b of the Personal Property Law to suspend garnishments, the judgment creditor can have a hearing in the appropriate civil court as provided in CPLR 5221, on notice to the judgment debtor, to obtain the relief of combined concurrent enforcement if indicated by justice and not inconsistent with the protection of the dependents and the judgment debtor’s own needs. (CPLR 5231, subd. [g], 5226, 5240, 5205, subd. [e].)
The considerations Avhicli have determined the decisions in the four proceedings herein are:
EXCLUSIVE SUPPOBT PAYEOLL OBDEB DEDUCTION (i.E. NO STAY GIVING AFFIBMATIVE BELIEF IN FAMILY COUBT FOE THE ABSENT JUDGMENT cbeditob) .
1. Separate homes of Avife and children on the one hand, and husband on the other, indicating no collusion and also a dilution of resources. Beahm; Squires.
2. An additional legal dependent in the husband’s separate establishment who must also be provided for, and who has been diverting a disproportionate amount of support away from wife and children. Beahm.
3. A judgment creditor who has improvidently lent money or extended credit for luxury or Avasteful consumption by the debtor in view of his earnings and his family obligations; e.g., a luxury automobile, a $700 home refrigeration system," or the like. Beahm.
4. A judgment creditor or creditors Avho have permitted debt to be incurred for profligate or wasteful reasons, which cannot in the reasonable future be paid off or refinanced. Beahm; Squires.
5. Dependents reduced to the level of Department of Welfare assistance, affecting dependents and public funds adversely. Beahm; Squires.
6. History of many hearings in Family Court indicating that no other means of enforcement except a payroll deduction order will avoid further violation and further arrears. Beahm.
7. Inadequate remainder for husband’s or father’s OAvn reasonable sustenance, if both deductions were to be permitted at once. Beahm; Squires.
*913 8. An avoidance of visitation of Ms cMldren by the father, indicating a loss of love and loss of interest in their support. Beahm.
9. Great bitterness between estranged husband and wife, with indications of avoidance of support by over-extension of credit as indicated by judgment and other creditors.
CONCURRENT SUPPORT PAYROLL DEDUCTION ORDER, PLUS GARNISHMENT, PERMITTED TO CONTINUE (i.E., IMMEDIATE AFFIRMATIVE RELIEF BY STAY GIVEN ABSENT JUDGMENT CREDITOR IN THE FAMILY COURT, AS PART OF THE APPLICATION OF SECTION 49-B OF THE PERSONAL PROPERTY LAW, WITHOUT PUTTING JUDGMENT CREDITOR TO THE DELAY AND DIFFICULTY OF INSTITUTING A SPECIAL PROCEEDING FOR SIMILAR FINAL RELIEF UNDER CPLB.)
Usually one finds the converse of one or more of the considerations above; but for clarity, they are affirmatively set forth:
1. Husband and wife living together, either constantly or from time to time.
2. If living apart, no other dependents to support in a second household.
3. No indications of extravagant and improvident credit by judgment creditor to this judgment debtor, for such luxuries as unnecessarily high rent, unnecessary automobile, unnecessary purchases, or for wasteful spending for gambling, alcoholism, drug addiction, cosigning notes, and the like. None of these problems were found in Bellia or Lloyd.
4. Reasonably foreseeable elimination of the judgment debt by continuing the garnishment. Bellia; Lloyd.
5. A necessary debt, for example, the money of the judgment creditor having been disbursed to purchase reasonable furniture being used by dependents (Lloyd), or a bank loan having been used to finance major emergency surgery (Lloyd), or to finance a home improvement for the dependents (Bellia).
6. Suspending the garnishment would cause disadvantage to the dependents herein, for example by causing repossession from dependents’ home of necessary furniture conditionally sold, or on which the judgment was founded (Lloyd). Here is the classic situation where the judgment creditor had not taken the ultimate credit risk by depending on prospective wage garnishment alone, but retained its title to the furniture as additional security.
7. Dependents not on Welfare. Bellia.
8. No substantial arrears and few hearings on arrears.
*914 9. Wages provide adequate support for dependents, for wage garnishment, and for needs of husband-father. Bellia.
10. Regular visitation of children, indicating affection and motivation to support them. Bellia,
11. Desire to accept family counselling by both husband and wife, with prospect of reuniting of family, so that welfare and creditors can both be satisfied. Bellia; cf. Squires.

. Compare CPLR 5226.

. Also note the policy of Pennsylvania to deny all garnishments upon wages as commented upon in Morris Plan Ind. Bank of N. Y. v. Gunning (295 N. Y. 324, 331-332).

. The Court of Appeals in a related area has applied just such an approach by analogy: “ to carry out -the total statutory policy, the attachment and garnishment statutes must be read together.” (See Morris Plan Ind. Bank of N. Y. v. Gunning, 295 N. Y. 324, 331.)