In the Matter of the COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, as Assignee of ANGELA G., Appellant, v ROBERTO G., Respondent.

First Department, December 27, 1979

*Angelo Aiosa* of counsel *(Francis F. Caputo* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellant.

No appearance by respondent.

## OPINION OF THE COURT

FEIN, J.

Pursuant to section 348 of the Social Services Law and by virtue of her receipt of aid to dependent children, Angela G., wife of respondent Roberto G., assigned her rights to support

to the Commissioner of Social Services of the City of New York (Commissioner). The Commissioner brought this proceeding against respondent pursuant to articles 4 and 5-A of the Family Court Act, alleging respondent is chargeable with the support of his wife and four infant daughters. At the hearing respondent acknowledged that Angela G. was his wife and that they had four infant children. Respondent conceded that he was employed, with a take-home salary of $154 per week, and agreed to pay $75 per week for the support of his family, an amount equivalent to the public assistance received by them.

The court then stated that a final order of support would be made in the amount of $75 per week with a direction that the payments be made "into court for the Department of Social Services". After an inquiry revealed that respondent was employed in a nursing home which had seven employees, the court declined to issue a payroll deduction order as required by section 49-b (subd 1, par [b]) of the Personal Property Law. The court stated: "In this case in order to preserve his job and preserve his rights I am not going to enter a payroll deduction order in the first instance without any further hearing."

The Family Court Judge rendered an opinion from the bench, later supplemented by a written opinion (*Matter of Angela G. v Roberto G.,* 98 Misc 2d 172). Concluding that, at least as to this respondent and others similarly situated who were employed in small businesses, section 49-b (subd 1, par [b]) of the Personal Property Law was unconstitutional in that the mandatory direction requiring the issuance of a payroll deduction order denied respondent and others similarly situated due process and the equal protection of the laws. The touchstone of the court's conclusion was that service of such an order might jeopardize respondent's employment. The Family Court Judge further ruled that the statute unlawfully interfered with and infringed upon the authority of the judiciary by precluding the exercise of judicial discretion in determining whether a payroll deduction order should be issued.

Prior to January 1, 1979, subdivision 1 of section 49-b of the Personal Property Law provided that upon ordering a person to pay for the support of his children, wife or former spouse or at any time thereafter the court, "upon a showing of good cause * * * may" issue a payroll deduction order. There had been a long history of the reluctance of courts to issue payroll deduction orders. The Judges feared that the persons responsi-

ble for the payments might lose their jobs because the average owner of a small business was thought to be unwilling to be subjected to the administrative and other duties required under a payroll deduction order (*Matter of Doe v Doe,* 37 Misc 2d 788).

As a consequence the Legislature amended CPLR 5252 which prohibits an employer from discharging or laying off an employee because such an order has been served on the employer. CPLR 5252 authorizes a civil action by the employee for wages lost as a result of the violation of the section and permits the court to order the reinstatement of such discharged employee. Despite the enactment of this section, payroll deduction orders were not issued.

The Legislature was advised that there was a substantial danger of the loss of Federal assistance to New York State's Child Support Enforcement Program because of the ineffectiveness of New York's efforts to locate absent parents and fathers of children in need of aid and to enforce their support obligations. In part this was said to be due to the need to return to court to obtain a payroll deduction order when a default occurred (according to the New York City Mayor's legislative representative in urging executive approval of L 1978, ch 456). Accordingly, the Legislature amended subdivision 1 of section 49-b of the Personal Property Law, to provide as follows: "Any order for support made after January one, nineteen hundred seventy-nine, which orders that the payment be made to the support collection unit, shall order the respondent's employer * * * to deduct from all monies due or payable to such person * * * such amounts as the court may find to be necessary to comply with its orders for the support of his or her children * * * and/or his or her spouse and/or former spouse, provided however that any such support order shall provide that no such deduction shall be made unless and until the support collection unit * * * has determined that such person is delinquent in making a specified number of payments determined by the court in such order and a copy of such order and determination has been served upon such person's employer * * * and provided that such person shall be given notice of such determination at least fifteen days prior to service of such order and determination on such employer * * * and if such person pays all arrearages within such fifteen day period, such order and determination shall

not be served and no deduction shall be required by reason of such determination". (L 1978, ch 456, § 17, eff Jan. 1, 1979.)*

Although the Family Court Judge declined to insert a provision in the order pursuant to this section, he noted the possibility for the Department of Social Services (DSS) to make a future application pursuant to section 454 of the Family Court Act for enforcement of the support order, including entry of a payroll deduction order upon "a showing of good cause". Conceding that the statute was mandatory, the Family Court Judge concluded that the issuance and enforcement of a conditional payroll deduction order in compliance with the statute would constitute taking of property without due process of law, in violation of the Fourteenth Amendment, and would deny respondent the equal protection of the law. Based on the court's own experience and a large number of cases in the Family Court, it was concluded that service of such a payroll deduction order upon the owner of a small business presented a strong risk of causing persons such as respondent to be fired from their jobs.

The Family Court Judge largely relied on *Goldberg v Kelly* (397 US 254) which held that a State which terminates public assistance payments to a particular recipient without affording him the opportunity of an evidentiary hearing prior to termination denies him procedural due process. In *Goldberg (supra)* the regulation struck down provided for seven days' notice of proposed termination, with notice of the availability to request review by higher authority and an opportunity to submit a written statement as to why the grant should not be discontinued. It also provided for automatic continuance of benefits until a review and decision had been made by the higher official, and provided for a posttermination fair hearing with full rights of confrontation of witnesses.

The *Goldberg* court stated (pp 262-263): "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Facist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."

---

* This amendment designated the above-quoted language as "paragraph (b)" of subdivision 1 of section 49-b. This paragraph has since been technically amended further (L 1979, ch 520, § 3, eff July 10, 1979).

■ The Family Court held that, as in *Goldberg,* there was no countervailing State interest. However, assuming the weighing-of-interests test is appropriate in determining whether there was due process here, it is clear that the scales favor the governmental interest. Respondent's significant interest in not having his wages garnisheed even to pay his acknowledged marital and parental support obligations must be weighed against the compelling interest of the Federal, State and local governments, acting through the Commissioner, in partially recouping welfare payments made to those in need from those obligated to support them.

Unlike *Goldberg,* there was no termination of respondent's right or the right of his family to receive payments for their support. The risk here is the danger of termination of respondent's employment by a recalcitrant employer in violation of law (CPLR 5252). Moreover, unlike *Goldberg,* a respondent here is given an opportunity for notice and hearing both at the initial support hearing determining the extent of his obligation based upon his earnings and responsibilities, and afterwards upon notification of a determination of default. Upon such notification he is afforded an opportunity to make up the delinquency as prescribed in the statute. Although the statute does not provide for application to the court for modification or to stay the enforcement of the order, it is plain that such right exists.

The Family Court Judge disposed of this by asserting that the calendar congestion in the Family Court was such that an application to the court for modification or to establish that the delinquency did not exist would not likely be heard until after the payroll deduction order had been served. This does not demonstrate that the statute is unconstitutional but rather suggests adoption of a procedure in the Family Court to insure that the deduction order is not served by the social service agency while a proceeding for modification is being processed in the Family Court (cf. *Bruno v Codd,* 47 NY2d 582).

This is not a case like *Goldberg (supra)* which turned on the fact that a prior hearing is required before action taken when "termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits" *(Goldberg v Kelly,* 397 US 254, 264, *supra).*

As held in *Mathews v Eldridge* (424 US 319, 349): "All that

is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard.' *Goldberg v. Kelly,* 397 U. S., at 268-269 (footnote omitted), to insure that they are given a meaningful opportunity to present their case. In assessing what process is due in this case, substantial weight must be given to the good-faith judgments of the individuals charged by Congress with the administration of social welfare programs that the procedures they have provided assure fair consideration of the entitlement claims of individuals. See *Arnett v. Kennedy,* 416 U. S., at 202 (WHITE, J., concurring in part and dissenting in part). This is especially so where, as here, the prescribed procedures not only provide the claimant with an effective process for asserting his claim prior to any administrative action, but also assure a right to an evidentiary hearing, as well as to subsequent judicial review, before the denial of his claim becomes final. Cf. *Boddie v. Connecticut,* 401 U.S. 371, 378 (1971)."

The Family Court Judge's speculation that service of a payroll deduction order might result in termination of respondent's employment is not a basis for a determination that there was a denial of due process. The court acknowledged that if what it regarded as proper notice of an application for a payroll deduction order was authorized instead of a mandatory order, issuance of a payroll deduction order would be warranted, albeit it might result in termination of employment. The danger of termination of employment would exist in either case. This is the risk to be balanced. It has nothing to do with the fact that the order is made mandatory. The carving out of a judicial exemption in favor of those employed by small businesses because of the danger to their jobs is unauthorized. Such risk is not a bar to the enforcement of judgments by salary garnishment. It is well settled that postjudgment garnishment statutes are not unconstitutional *(Endicott Johnson Corp. v Encyclopedia Press,* 266 US 285; *Brown v Liberty Loan Corp. of Duval,* 539 F2d 1355, 1363, considering the danger of employment termination as a consequence, cert den 430 US 949). As *Brown* notes, neither *Sniadach v Family Fin. Corp.* (395 US 337) nor *Fuentes v Shevin* (407 US 67) nor *North Ga. Finishing v Di-Chem* (419 US 601) are applicable. They are distinguishable in that each held unconstitutional prejudgment remedies made available without notice or an opportunity for a judicial hearing.

Here, respondent had notice and a full opportunity for a judicial hearing on the issues of liability for support, ability to pay, and appropriate amount as well as the continuous availability of opportunity for a hearing upon an application for either prospective modification or cancellation of arrears for good cause shown (Family Ct Act, §§ 451, 458). The provision for a payroll deduction order to be included in support orders whenever the court directs payments to be made to a support collection unit is a postjudgment collection remedy intended to enforce judicially established obligations. It does not violate due process.

A determination by the support collection unit, successor to the Family Court's former Support Bureau, that a default had occurred in the court-specified number of payments provides substantial assurance that respondent's interests are not being compromised (see *Barry v Barchi,* 443 US 55). Respondent has not been denied due process.

■ Equally untenable is the Family Court Judge's suggestion that the requirement of a mandatory conditional payroll deduction order denied respondent the "equal protection of the law" because that statute requires such orders only where support payments are required to be made to a support collection unit, the successor to the Family Court Support Bureau (Family Ct Act, § 221 *et seq.;* see L 1977, ch 516, §§ 11, 23), and not where the payments are to be made directly to the spouse and/or children.

At the threshold of consideration of any equal protection claim is the determination of the applicable standard of review. Recipients of State aid, as such, do not constitute a suspect classification. Speculation that there might be an unlawful termination of employment by a recalcitrant employer is hardly a ground for rejecting the classification as unconstitutional in the face of the family's need for support and the right of the State to recoup the support advanced from a respondent responsible for the family's support.

Section 49-b (subd 1, par [a]) of the Personal Property Law referable to those required to make support payments directly, rather than to support collection units, provides that "the court, at the time an order of support is made or any time thereafter, upon a showing of good cause, shall order his employer * * * to deduct from all monies due or payable to such person * * * such amounts as the court may find to be necessary to comply with its order * * *. In determining good

cause, the court may take into consideration evidence of the degree of the respondent's past financial responsibility, credit references, credit history, and any other matter the court considers relevant in determining the likelihood of payment in accordance with the support order."

The distinction between those respondents required to make payments to a support collection unit (whose children and/or spouse receive some kind of State aid) and those respondents required to make the payments directly does not deny the equal protection of the laws. Where the Legislature makes a classification premised upon social and economic considerations the classification is not unconstitutional if it has a rational basis (Dandridge v Williams, 397 US 471, 485; Montgomery v Daniels, 38 NY2d 41, 61; Matter of Jesmer v Dundon, 29 NY2d 5, app dsmd 404 US 953). Here the classification is made between those receiving State aid and those who do not. The objective is to insure, so far as practicable, a recoupment of the State aid. Respondents not required to make payments to support collection units do not receive State aid. Moreover, since the determination of delinquency is being made by the support collection unit, an impartial governmental agency, there is an assurance or at least a substantial likelihood that the delinquency claim will be well founded and not designed for some other purposes. There is no danger of false or mistaken charges of nonpayments by malicious or negligent dependents, as might occur with respect to those who make direct payments. It is plain that the legislative determination separately classifying those required to make support payments to a support collection unit does not constitute invidious discrimination denying the equal protection of the laws (Matter of Jesmer v Dundon, supra).

The State has broad power when it comes to making classifications, particularly in social and economic matters, so long as the line drawn is a rational one (Levy v Louisiana, 391 US 68, 71-72). Thus, in Matter of Jesmer v Dundon (supra) a distinction between juvenile delinquents and young criminals, and between their respective parents, was found not to constitute an invidious discrimination because the parents of juvenile offenders were to continue the support of their children even where institutional treatment was directed, whereas parents of young criminals had no such responsibility because of the place and circumstances of their incarceration.

To the same tenor is Matter of Levy (38 NY2d 653, app

dsmd 429 US 805) where the legislation sustained required parents of children handicapped by other than blindness or deafness to contribute to the educational maintenance of those children, although it did not so require with respect to the parents of children who are blind or deaf. So long as the discrimination between different classes of persons has "some relevance to the purpose for which the classification is made" *(Baxstrom v Herold,* 383 US 107, 111) it will not run afoul of the mandate prohibiting the denial of the equal protection of the laws. The State's strong interest in reducing the expense and increasing the effectiveness of its child support enforcement programs warrants the distinction between those who make support payments directly and those who pay through the support collection unit *(Dandridge v Williams,* 397 US 471, *supra).*

There was no denial of the equal protection of the laws with respect to the respondent or others similarly situated.

■ The Family Court Judge also concluded that the requirement for a mandatory conditional payroll deduction order unlawfully interfered with judicial discretion and made the court a rubber stamp for administrative recommendations. There is no basis for such conclusion. In making the original order the court is empowered to determine the amount to be paid and the number of defaults upon which a payroll deduction order shall become effective. This is the exercise of judicial discretion and authority in making the original determination.

Since 15 days' notice must be given, the respondent is afforded an opportunity to prevent an order from being served on his employer by paying the delinquency or applying to the court for a stay. The Family Court Judge is provided a sufficient opportunity for the exercise of the appropriate judicial discretion.

The Legislature may not constitutionally regulate the details of the manner of performance of the court's constitutionally mandated duties *(Riglander v Star Co.,* 98 App Div 101, affd 181 NY 531). However, the Legislature may properly prescribe judicial procedures designed to relieve the court of specific categories of cases to relieve congestion or for allied purposes *(Cohn v Borchard Affiliations,* 25 NY2d 237; *Montgomery v Daniels,* 38 NY2d 41, *supra).* One purpose of the mandatory payroll deduction order is the avoidance of an additional application to the court.

The court's discretion is exercised when the hearing is held to determine the amount of support and the number of defaults required to trigger service of the order on the employer. The 15-day notice provision furnishes adequate opportunity to apply to the court if the delinquency is not cured by payment. The court is not divested of discretion.

Accordingly, the order of the Family Court, New York County (TURRET, J.), entered January 18, 1979, which granted petitioner's application for an order directing respondent to pay $75 per week for the support of his family but did not include an income deduction order pursuant to section 49-b (subd 1, par [b]) of the Personal Property Law should be modified, on the law, to the extent of remanding the proceeding to the Family Court with a direction to include in its support order an income deduction provision pursuant to section 49-b (subd 1, par [b]) and otherwise affirmed, without costs.

BIRNS, J. P., LANE and SILVERMAN, JJ., concur.

Order, Family Court, New York County, entered on January 18, 1979, unanimously modified, on the law, to the extent of remanding the proceeding to the Family Court with a direction to include in its support order an income deduction provision pursuant to section 49-b (subd 1, par [b]) and otherwise affirmed, without costs and without disbursements.