**Charles F. DIOTTE, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**Barbara BLUM, Individually and as Commissioner of the New York State Department of Social Services; Lillian Roberts, Individually and as Industrial Commissioner of the State of New York; John J. Fahey, Individually and as Commissioner of the Albany County Department of Social Services, Defendants.**

**No. 82–CV–486.**

United States District Court, N.D. New York.

April 2, 1984.

Legal Aid Society of Northeastern New York, Inc., Albany, N.Y., for plaintiff; Joel F. Spitzer, Michael Foster, Wendy Wahlberg, Albany, N.Y., of counsel.

Philip R. Murray, Albany County Department of Social Services, Legal Division, Albany, N.Y., for defendant Fahey; Alan P. Joseph, Albany, N.Y., of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for State defend-

ants; Robert B. Keyes, Asst. Atty. Gen., Albany, N.Y., of counsel.

### MEMORANDUM–DECISION and ORDER

MINER, District Judge.

## I

This action arises out of a challenge to § 49–b of the New York Personal Property Law which allows for "income deduction" from an individual's state unemployment insurance benefits for purposes of child support payments. The complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that the New York statute deprived plaintiff of his due process and equal protection rights under the United States Constitution. Additionally, the complaint alleges that the New York scheme conflicts with section 454(19) of the Social Security Act, 42 U.S.C. § 654(19), and § 48–b of the New York Personal Property Law. Jurisdiction is predicated upon 28 U.S.C. § 1343, as well as upon principles of pendent jurisdiction. Before this Court is plaintiff's motion for partial summary judgment, Fed.R.Civ.P. 56(a), as well as the state defendants' motion for summary judgment, Fed.R.Civ.P. 56(b).

## II

### A. *Statutory framework*

A proper understanding of the instant challenge requires at the very least a brief survey of the labyrinth of federal and state statutory provisions which serve as its predicate. The starting point for purposes of these motions is the federal public assistance program of Aid to Families with Dependent Children ("AFDC"), 42 U.S.C. §§ 601–615, which requires that any applicant for or recipient of such aid assign the state his or her right to receive any support payments from any other person in accordance with the state's federally approved child support enforcement program. 42 U.S.C. § 602(26). The federal child support enforcement program, 42 U.S.C. §§ 651–665, sets forth the extensive requirements any such state program must meet. *See* 42 U.S.C. § 654. Of particular relevance here is 42 U.S.C. § 654(19), which mandates that a state plan for child and spousal support

provide that the agency administering the plan—

(A) shall determine on a periodic basis, from information supplied pursuant to section 508 of the Unemployment Compensation Amendments of 1976, whether any individuals receiving compensation under the State's unemployment compensation law (including amounts payable pursuant to any agreement under any Federal unemployment compensation law) owe child support obligations which are being enforced by such agency, and

(B) shall enforce any such child support obligations which are owed by such an individual but are not being met—

(i) through an agreement with such individual to have specified amounts withheld from compensation otherwise payable to such individual and by submitting a copy of any such agreement to the State agency administering the unemployment compensation law, or

(ii) in the absence of such an agreement, by bringing legal process (as defined in section 662(e) of this title) to require the withholding of amounts from such compensation.

Pursuant to and in accordance with these federal requirements, New York State has adopted its own child support enforcement program. Section 349–b of the New York Social Services Law mandates, as a condition of eligibility for public assistance under the State's Aid to Dependent Children program, N.Y.Soc.Serv.Law §§ 343–362 (McKinney 1983), an assignment of support rights to both the state and an appropriate social services district.

The organizational and procedural functions of the local social services districts in the enforcement program are set forth in N.Y.Soc.Serv.Law §§ 111–a to 111–j (McKinney 1983). Of particular importance here is § 111–h providing for Support Collection Units ("SCUs"):

1. Each social services district shall establish a support collection unit in accordance with regulations of the department to collect, account for and disburse funds paid pursuant to any order of support issued under article four, five, or five-A of the family court act.

2. The support collection unit shall inform the petitioner and respondent of any case in which a required payment has not been made within two weeks after it was due and shall assist in securing voluntary compliance with such orders or in preparation and submission of a petition for a violation of a support order.

. . . .

Of equal importance is § 111-j which provides, in relevant part:

1. (a) The department shall determine on a periodic basis whether any individual receiving unemployment insurance benefits pursuant to article eighteen of the state's labor law owes child support obligations which are being enforced by the department or the child support enforcement unit of a social services district and shall enforce any child support obligations which are owed by such individual but are not being met through an agreement with such individual to have specific amounts withheld from such benefits otherwise payable to such individual and by submitting a copy of such agreement to the New York state department of labor.

(b) In the absence of such an agreement, the department shall enforce any child support obligations as authorized by the court in any order establishing such obligations and as otherwise provided by law.

. . . .

Finally, the statute directly in issue here, N.Y.Pers.Prop.Law § 49–b (McKinney Supp.1983–1984), provides:

1. (a) When a person is ordered by a court of record to pay for the support of his children under the age of twenty-one, and/or spouse, and/or former spouse, the court, at the time an order of support is made or any time thereafter, upon a showing of good cause, shall order his employer, future employer, former employer, the auditor, comptroller, or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States to deduct from all monies due or payable to such person, the entitlement to which is based upon remuneration for employment, past or present, such amounts as the court may find to be necessary to comply with its order for the support of his or her children under the age of twenty-one and/or his or her spouse, and/or former spouse, as well as any accumulated amount in arrears. In determining good cause, the court may take into consideration evidence of the degree of the respondent's past financial responsibility, credit references, credit history, and any other matter the court considers relevant in determining the likelihood of payment in accordance with the support order. Proof that the respondent is three payments delinquent establishes a prima facie case against the respondent, which can be overcome only by proof of respondent's inability to make the payments. Unless such presumption is overcome, the court shall order the respondent's employer, former employer, the auditor, comptroller, or disbursing officer of any pension fund, to deduct from said employee's wages, salary or commission or pension such amounts as the court may find to be necessary to comply with the order of support as well as any accumulated amount in arrears.

(b) When an order for support is made which orders that the payment be made to the support collection unit, the court, at the time such order of support is made, shall order the respondent's employer, future employer, former employer, the auditor, comptroller, or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States to deduct

from all monies due or payable to such person, the entitlement to which is based upon remuneration for employment, past or present, such amounts as the court may find to be necessary to comply with its orders for the support of his or her children under the age of twenty-one, and/or his or her spouse and/or former spouse, provided however that any such order shall provide that no such deduction shall be made unless and until the support collection unit established by the appropriate social services district has determined that such person's support payment arrears equal or exceed the total amount of monies payable in a specified number of payments determined by the court in the support order and a copy of the income deduction order and determination has been served upon such person's employer, future employer, former employer, the auditor, comptroller or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States; and provided that such person shall be given notice of such determination at least fifteen days prior to service of such order and determination on such employer, future employer, former employer, the auditor, comptroller or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States, and if such person pays all arrearages within such fifteen day period, such order and determination shall not be served and no deduction shall be required by reason of such determination, but such payment shall not affect or otherwise limit any determination made as a result of any subsequent delinquencies. Such employer, future employer, former employer, the auditor, comptroller or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States shall deduct the amount as ordered from the monies due or payable and forward it monthly as directed in the order.

### B. *Background*

Plaintiff commenced this action [1] on May 20, 1982 seeking declaratory and injunctive relief as well as monetary damages in the amount of $25,000 stemming from alleged violations of his constitutional rights. The second amended complaint names as defendants Barbara Blum, individually and as Commissioner of the New York State Department of Social Services; Lillian Roberts, individually and as Industrial Commissioner of the State of New York; and John J. Fahey, individually and as Commissioner of the Albany County Department of Social Services.[2]

Plaintiff Charles Diotte was divorced from his wife of fifteen years, Marlene, in August of 1978. Charles and Marlene then lived separately until a reconciliation in April of 1982. Prior to the reconciliation, Marlene had been receiving a grant of public assistance for herself and the couple's five children. On May 28, 1981, the Albany County Family Court issued a support or-

---

**1.** As originally commenced, the action purported to be a class action brought on behalf of "those persons whose support obligations are or will be subject to enforcement by the New York State Commissioner of Social Services and/or a Commissioner of Social Services of a Political subdivision of New York State by means of an order made or issued pursuant to N.Y.Per. [sic] Prop.Law Section 49–b(1)(b)." Second Amended Complaint, ¶ 7. By Order dated December 30, 1983, this Court denied plaintiff's application for class certification, Fed.R.Civ.P. 23(c)(1), based on the following grounds: (1) the proposed class was too broad; (2) plaintiff was unable adequately to represent the class of which he was no longer a member; and (3) there was no necessity for class certification, *see*

*Galvan v. Levine*, 490 F.2d 1255, 1261 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974); *Ruiz v. Blum*, 549 F.Supp. 871, 878 (S.D.N.Y.1982). *See Diotte v. Blum*, No. 82–CV–486 (N.D.N.Y. Dec. 30, 1983).

**2.** By Order dated August 11, 1983, plaintiff was permitted to withdraw his claims against Chief Judge Lawrence H. Cooke of the New York Court of Appeals, the New York Court of Appeals, the Administrative Board of the New York Courts, and Herbert Evans, Chief Administrative Judge of the Unified Court System of New York, all of whom originally were named as defendants. *Diotte v. Blum*, No. 82–CV–486 (N.D.N.Y. Aug. 11, 1983).

der directing Charles to pay seventy-five dollars a week plus twenty-five dollars a week for arrearages toward his children's support. Because the children and their mother were recipients of public assistance under AFDC, 42 U.S.C. §§ 601–615, the support order directed plaintiff to make payments directly to the Albany County Support Collection Unit ("SCU"). In the same proceeding, the court ordered income deduction pursuant to N.Y.Pers.Prop.Law § 49–b whereby plaintiff's employer was to be directed to withhold $100.00 a week from plaintiff's wages and to pay such amount to SCU if plaintiff failed to make three support payments.[3] This order never was forwarded to plaintiff's employer.[4] The order also provided that plaintiff was to report any change in his employment or residence to SCU.

Sometime in November of 1981, plaintiff's employment was terminated. After applying for unemployment insurance benefits, plaintiff was determined to be eligible at a rate of ninety-four dollars a week. Plaintiff received his first benefit payment for the week ending November 22, 1981, but apparently never notified SCU of the change in his employment status.

Already unable to meet his support obligations, Charles Diotte's financial situation was soon to worsen. On November 19, 1981, SCU sent a "determination of missed payments" to the New York State Unemployment Insurance Office ("UIO"), advising that it was required to withhold $100.00 a week from plaintiff's unemployment benefits and to pay that amount to SCU. UIO responded on November 20th that it could not comply with the request because plain-

tiff was not receiving any benefits at that time.

On January 14, 1982, SCU sent plaintiff a notice pursuant to N.Y.Pers.Prop.Law § 49–b(1)(b) advising him that "an automatic wage deduction will be imposed on your salary within fifteen (15) days if you fail to either pay your delinquency or notify us of the reason for your failure to comply." Second Amended Complaint, ¶ 22. Upon receipt of the notice, plaintiff contacted Support Investigator Julian D'Alessandro and informed him that the reason for his failure to comply was that he was unemployed and that his sole source of income was his unemployment benefits. D'Alessandro was advised by plaintiff that he hoped to return to work in April. Although denied by plaintiff, *see* Second Amended Complaint, ¶ 23, D'Alessandro states in an affidavit that he instructed plaintiff to apply to the family court for a modification of the support order. Affidavit of Julian D'Alessandro, ¶ 9.

On March 16, 1982, *without any further notice to plaintiff*, SCU again sent a determination of missed payments to UIO and again directed that it withhold seventy-five dollars a week from plaintiff's unemployment benefits and that it pay that sum to SCU. From April 11, 1982 until May 31, 1982, UIO withheld the entire ninety-four dollars of plaintiff's weekly unemployment benefits. Apparently, seventy-five dollars was withheld pursuant to the court order and the additional nineteen dollars was withheld because of two payments that it had failed to withhold prior to April 11th.

---

**3.** The income deduction order was simply stamped onto the bottom of the support order and recited the following:

> Ordered,
> Income deduction ordered pursuant to PPL § 49–b(1) upon the failure of the respondent to make three (3) child support payments whether consecutive or not and the respondent is ordered to report any change in employer or residence to the Support Collection Unit ....

Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, Appendix A.

**4.** Apparently, the order is not forwarded to an employer until a respondent has missed three support payments. When the delinquencies have been established, SCU sends the employer a "Determination of Missed Payments" directing it to withhold any monies due the respondent in accordance with the order. *See* Defendants' Memorandum of Law In Opposition to Plaintiff's Motion for Partial Summary Judgment, Appendix C.

On May 11, 1982, plaintiff petitioned the family court for modification of the support order. Pursuant to a stipulation entered into with SCU on July 20, 1982, the unemployment compensation intercepts were discontinued pending conclusion of the proceedings. On February 1, 1983, after several adjournments, the family court ordered that the underlying support order be terminated. Plaintiff now claims that as a result of the withholding of his unemployment compensation benefits, he and his household were without funds for food, rent and other necessities from April 11, 1982 until June 11, 1982, when he received his first paycheck after returning to work.[5]

Four distinct claims are raised by plaintiff's complaint. First, plaintiff argues that insofar as § 49–b authorizes and permits the concurrent issuance of income deduction orders with the making of support orders when the support is payable directly to SCU instead of the person legally entitled to the support, and requires the implementation of the income deduction order without regard either to whether there is good cause for the failure to make the required payments or to a respondent's ability to pay the ordered support after he fails to make a specified number of support payments, that section operates to deprive plaintiff of the equal protection of the laws, since persons whose dependents are not receiving public assistance are not similarly subject to an automatic income deduction.

Second, plaintiff claims that the simultaneous issuance of an income deduction order with the support order violates his due process rights inasmuch as he is deprived of notice and an opportunity to be heard with respect to whether there is good cause to implement the order and whether his ability to pay has remained unchanged.

Third, plaintiff claims that § 49–b violates section 454(19) of the Social Security Act, 42 U.S.C. § 654(19), by authorizing or permitting income deduction orders to be made other than by agreement or legal process.

Finally, plaintiff argues that in withholding the entire amount of his unemployment benefits and leaving him with no income, defendants violated N.Y.Pers.Prop.Law § 48–b (McKinney 1983) which provides, by plaintiff's interpretation, that an income deduction order may not be made so as to leave a respondent with less than a net income of eighty-five dollars a week.

### III

On motions for summary judgment it is well established that the Court's function "is not to resolve issues of fact but to determine whether any material factual issues are raised after resolving all questionable inferences in favor of the party against whom the judgment is sought. Only if no material factual issues exist may summary judgment be granted." *United States v. Matheson,* 532 F.2d 809, 813 (2d Cir.), *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976); *see also Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444–45 (2d Cir.1980); *Heyman v. Commerce & Industry Insurance Co.,* 524 F.2d 1317, 1319 (2d Cir.1975). Although the moving party bears the burden of clearly establishing the non-existence of any issue of fact that is material to a judgment in his favor, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–61, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970), the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.

---

5. Plaintiff also claims that he was "compelled to leave his separate residence and move in with his ex-wife and children in order to survive," and that from April 16, 1982 to May 31, 1982, his wife's public assistance grant was reduced from $247.43 semi-monthly to $36.46 semi-monthly "upon the deliberately erroneous assumption that she and plaintiff's children had plaintiff's entire unemployment benefits grant each week to use for their support, when in fact, at all times since April 11, 1982, the Support Collection Unit retained plaintiff's entire unemployment benefit for their own use and purpose." Second Amended Complaint, ¶¶ 29, 30.

Civ.P. 56(e); *In re B.D. International Discount Corp. v. Chase Manhattan Bank, N.A.,* 701 F.2d 1071, 1077 n. 11 (2d Cir. 1983), *cert. denied,* — U.S. —, 104 S.Ct. 108, 78 L.Ed.2d 110 (1983). As will be evident from the discussion which follows, there are no disputed issues of material fact with respect to plaintiff's due process claims, and, accordingly, summary judgment on those claims is appropriate. Similarly, since plaintiff's remaining claims involve purely legal questions, defendants' cross-motion for summary judgment, for the reasons set forth below, must be granted.

### IV

#### A. *Plaintiff's standing*

■ Although not raised by the parties, this Court is constrained to address the threshold issue of plaintiff's standing to seek injunctive and declaratory relief. The thrust of plaintiff's complaint concerns the application of N.Y.Pers.Prop.Law § 49–b to deprive him of his entitlement to unemployment insurance benefits. There is no question, however, that plaintiff has not been unemployed during the course of this action. Indeed, plaintiff returned to work in early June of 1982, less than one month after this action was commenced. While plaintiff was therefore subject to the alleged constitutional deprivations of the statute when the action was first commenced, there can be no serious dispute that plaintiff no longer suffers from the statute's continued application. "It is not enough that the initial requirements of standing ... have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition." 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533 at 263 (1975); *cf. Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973) ("The usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated"); *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950). Although plaintiff does possess standing to press his claim for any damages suffered from the statute's application, this Court concludes that any claim for injunctive or declaratory relief has been rendered moot by plaintiff's return to work.

The now familiar requirement that those who seek to invoke the jurisdiction of the federal courts must satisfy the prerequisite imposed by article III of the Constitution by alleging an actual case or controversy, *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968), remains unfulfilled in this case. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse affects." *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974). Nor can plaintiff rely on the judicially created exception to the article III standing requirement by arguing that his claim is "capable of repetition yet evading review." Invocation of that exception has consistently been limited by the Supreme Court to cases where two elements are combined: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. The instant case, not a class action, clearly does not satisfy the latter element." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975); *see also Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

While there is no doubt that § 49–b would again work its allegedly adverse effect upon plaintiff *should he subsequently become unemployed,* the record contains no support upon which to ground such speculation. Even were plaintiff to assert that he again could face unemployment, this assertion would "hardly [be] a substitute for evidence that this is a prospect of 'immediacy and reality,' " *Golden v. Zwickler,* 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22

L.Ed.2d 113 (1969), and "does not create the actual controversy that must exist for a declaratory judgment to be entered." *City of Los Angeles v. Lyons*, 461 U.S. 95, ——, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983). "[S]uch speculation is insufficient to establish the existence of a present, live controversy." *Id.* (quoting *Ashcroft v. Mattis*, 431 U.S. 171, 172–73 n. 2, 97 S.Ct. 1739, 1740 n. 2, 52 L.Ed.2d 219 (1977)).

Plaintiff's standing would perhaps fare better were he to allege a propensity for recurring bouts of unemployment, for example, were his occupation one of a seasonal or cyclical nature, *cf. Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (plaintiff employer, engaged in cyclically recurring bargaining with union challenging state's policy of paying unemployment benefits to strikers, has standing), but no such showing has been made here. *Compare with Finberg v. Sullivan*, 634 F.2d 50, 55 (3d Cir.1980) (en banc) ("In the present case, Mrs. Finberg does have some reason to fear that she will suffer another attachment of her bank accounts. She remains a judgment debtor. As the record indicates that she is an elderly widow with a modest income, this judgment could remain unsatisfied for some time. Future efforts to execute the judgment are therefore likely.... Furthermore, Mrs. Finberg's modest income and the difficulties that she has demonstrated in this case in meeting the demands of a creditor indicate that she may incur another money judgment and suffer an attempted garnishment to execute it. This possibility is similar to that found adequate in *SEC v. Sloan*, 436 U.S. 103, 109–10, 98 S.Ct. 1702, 1707, 56 L.Ed.2d 148 (1978). In *Sloan*, the Court found that a securities issuer's history of violations of SEC and stock exchange rules raised a 'reasonable expectation' of future violations and hence of future SEC orders to suspend trading in the issuer's securities").

The Supreme Court's most recent pronouncement on the standing issue and the attendant principle of "capable of repetition yet evading review" provides ample support for this Court's conclusion that plaintiff may not pursue equitable relief. In the context of a challenge to a Los Angeles Police Department policy of employing life-threatening chokeholds in the apprehension of suspects, the Court concluded that plaintiff had not demonstrated the existence of a case or controversy.

In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning, or, (2) that the City ordered or authorized police officers to act in such manner.

*City of Los Angeles v. Lyons*, 461 U.S. 95, ——, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983) (emphasis in original). The Court noted:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.*

Finally, the Court concluded that

> [t]he rule that a claim does not become moot where it is capable of repetition, yet evades review, is likewise inapposite. Lyons' claim that he was illegally strangled remains to be litigated in his suit for damages; in no sense does that claim "evade" review. Furthermore, the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality. *De-*

*Funis v. Odegaard*, 416 U.S. 312, 319 [94 S.Ct. 1704, 1707, 40 L.Ed.2d 164] (1974). 461 U.S. at ——, 103 S.Ct. at 1670.

 Precisely because plaintiff has an action at law for damages against these defendants, his injuries are not in any sense irreparable and the equitable remedies he seeks are therefore unavailable. *Id.* 461 U.S. at —— ——, 103 S.Ct. at 1670–71. Accordingly, consideration is directed to the merits of plaintiff's claims solely in the context of his demand for damages.[6]

### B. *Violation of N.Y.Pers.Prop.Law § 48–b*

Plaintiff's fourth claim for relief contained in the second amended complaint alleges a violation of N.Y.Pers.Prop.Law § 48–b (McKinney 1976). That section provides:

Notwithstanding anything contained in this article, no portion of the assignor's future earnings shall be withheld by reason of any assignment, unless such earnings exceed the sum of eighty-five dollars per week.

There is no dispute here that defendants withheld all of plaintiff's unemployment benefits and left him with no income for a period of two months. Nonetheless, defendants advance two arguments with respect to the inapplicability of § 48–b. First, defendants assert that the eighty-five dollar amount is not an exemption, but rather only a threshold. That is to say, withholding may not be effected unless the assignor realizes earnings of at least eighty-five dollars a week. *But see Liedka v. Liedka*, 101 Misc.2d 305, 313–14, 423 N.Y.S.2d 788, 794 (N.Y.Fam.Ct. Onondaga County 1979) (§ 48–b "must be interpreted to mean that a person who is subject to a wage deduction support order and an assignment must be allowed to retain $85 per week for his own needs"). Second, defend-

ants suggest that that section simply has no relevance to the intercept of *unemployment* benefits but rather deals only with the "wages of an employed person."

 Defendants omit to mention what is perhaps their strongest argument. Section 49–b(2) specifically provides that "[t]he limitations and regulations of sections forty-six to forty-eight-a, personal property law, *do not apply* to assignment of, or order for, monies due or payable … for the support of children under the age of twenty-one, and/or spouse, and/or former spouse, when such assignments or orders are made to comply with a court order of support." (emphasis added). This Court need not reach the merits of this claim, however, since the relief sought, against the state defendants, is barred by the eleventh amendment. With respect to defendant Fahey, however, it is clear that the exclusion contained in § 49–b(2) forecloses any grant of summary judgment to plaintiff.

The recent decision of the Supreme Court in *Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) is dispositive here. Noting that because a "federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law," *id.* at ——, 104 S.Ct. at 909, the Court concluded that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment …," *id.* at ——, 104 S.Ct. at 916–17, and that a federal court is therefore without jurisdiction to hear such claims. Accordingly, the state defendants' motion for summary judgment with respect to the alleged state law violations properly is granted.

### C. *Violations of 42 U.S.C. § 654(19)*

 Under federal law, a state plan for child support may provide for the enforce-

---

**6.** Since the damage claim is directed not against the State itself but rather against certain state officials, the eleventh amendment does not bar such relief. *See Pennhurst State School & Hospital v. Halderman*, —— U.S. ——, ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Of course, the eleventh amendment does not bar monetary relief against the county official named as a defendant here.

ment of child support obligations through interception of unemployment insurance benefits only pursuant to an agreement with the individual or by "legal process." 42 U.S.C. § 654(19). "Legal process" is defined in 42 U.S.C. § 662(e) as:

> any writ, order, summons, or other similar process in the nature of garnishment, which—
>
> (1) is issued by (A) a court of competent jurisdiction within any State, territory, or possession of the United States, (B) a court of competent jurisdiction in any foreign country with which the United States has entered into an agreement which requires the United States to honor such process, or (C) an authorized official pursuant to an order of such a court of competent jurisdiction or pursuant to State or local law, and
>
> (2) is directed to, and the purpose of which is to compel, a governmental entity, which holds moneys which are otherwise payable to an individual, to make a payment from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support or make alimony payments.

Plaintiff contends that N.Y.Pers. Prop.Law § 49–b somehow violates this provision by allowing withholding of unemployment compensation benefits based on an order issued at a time when the individual responsible for child support may not have been in receipt of unemployment compensation. Plaintiff does not detail, and this Court cannot see, precisely how this procedure violates the "legal process" requirements of § 654(19).[7] It is clear in the present case that New York's method of intercepting unemployment benefits does in fact comport with the requirements of that section. Implementation of that section's mandate is provided by § 111–j of the New York Social Services Law which directs that enforcement of child support obligations shall be accomplished by an agree-

ment with the individual, N.Y.Soc.Serv.Law § 111–j(1)(a) (McKinney 1983), or, absent such agreement, "as authorized by the court in any order establishing such obligations ...." *Id.* § 111–j(1)(b).

Because plaintiff cannot dispute that an "order ... [was] issued by ... a court of competent jurisdiction ... directed to, and the purpose of which [was] to compel, a governmental entity, which h[eld] moneys which [were] otherwise payable to an individual, to make a payment from such moneys to another party in order to satisfy a legal obligation of such individual to provide child support ...," 42 U.S.C. § 662(e), plaintiff's statutory claim is simply without merit. Accordingly, with respect to that claim, defendants' motion for summary judgment properly is granted.

### D. *Constitutional challenges*
#### 1. *Equal protection violation*

The thrust of plaintiff's equal protection challenge is that N.Y.Pers.Prop.Law § 49–b impermissibly differentiates between those persons who have dependents receiving public assistance and those persons who do not. Specifically, plaintiff claims that § 49–b subjects supporters of families on public assistance to automatic income deduction orders and requires that support payments be made directly to SCU while supporters who pay their support directly to their dependents are not subjected to simultaneous income deduction orders. *Compare* N.Y.Pers.Prop.Law § 49–b(1)(a) (McKinney Supp.1983–1984) ("When a person is ordered by a court of record to pay for the support of his children ..., the court, at the time an order of support is made *or at any time thereafter, upon a showing of good cause,* shall order his employer ... to deduct from all monies due or payable to such person ... such amounts as the court may find to be necessary to comply with its order for the support of his or her children ...." (emphasis added))

---

7. Plaintiff seems to be arguing that legal process is lacking with respect to a determination of the *amount* of benefits to be withheld. *See* Second Amended Complaint, ¶ 38. There is, however, simply no support for plaintiff's conclusion that

"the federal statute envisions ... legal process brought at the time of the receipt of unemployment compensation ...." Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 17–18.

*with* N.Y.Pers.Prop.Law § 49–b(1)(b) (McKinney Supp.1983–1984) ("When an order for support is made which orders that the payment be made to the support collection unit, the court, *at the time such order of support is made, shall order* the respondent's employer ... to deduct from all monies due or payable to such person ... such amounts as the court may find to be necessary to comply with its orders for the support of his or her children ...." (emphasis added)).

Plaintiff also argues that income deduction pursuant to § 49–b(1)(a) is authorized only after a showing of good cause while an income deduction order made pursuant to § 49–b(1)(b) is entered automatically at the time the original support order issues. *See* Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 13–14. This Court finds plaintiff's equal protection claims to be without merit.

The equal protection clause commands that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920). However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940). The initial discretion to determine classifications resides with the states and they "must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill." *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). Therefore, in applying the equal protection clause "to most forms of state action, we ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Id.*

■ The parties are in agreement that the appropriate standard by which to evalu-

ate the equal protection challenge focuses on whether there is a rational basis for the classification in question. Because neither a suspect class nor a fundamental right has been implicated, the statute here involved need only be rationally related to a legitimate governmental purpose. *Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); *see Califano v. Aznavorian*, 439 U.S. 170, 174–75, 99 S.Ct. 471, 473–74, 58 L.Ed.2d 435 (1978) (social welfare legislation requires only rational basis and enjoys strong presumption of constitutionality); *Dandridge v. Williams*, 397 U.S. 471, 485–86, 90 S.Ct. 1153, 1161–62, 25 L.Ed.2d 491 (1970) (same).

■ The suggestion that the statute's distinction is not rationally related to a legitimate government purpose is at best unpersuasive. Plaintiff's argument that "[t]here can be no legitimate governmental interest for a statute that requires a Support Collection Unit to attach income without regard to whether it is entitled to it in light of all the defenses that might be raised by a respondent," Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 14, misses the mark entirely. The relevant question, for equal protection purposes, concerns not the propriety of the state's scheme, *see Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 109, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949) (question whether regulation "is sound or appropriate" is irrelevant), but rather only whether that scheme "bear[s] some rational relationship to a legitimate state end." *Clements v. Fashing*, 457 U.S. at 963, 102 S.Ct. at 2843.

■ While plaintiff may be correct in his assertion that the state has no legitimate interest in collecting support payments to which it is not entitled, (*e.g.*, in those cases where legitimate defenses could defeat the underlying obligations), that is not the interest at issue here. Instead, the Court must look to the state's interest in maintaining the integrity of its state aid pro-

grams. Because the state, as assignee of the publicly assisted dependent family's right to support payments, pays the family's support, it has a vital interest in recouping those expenditures from the individual owing support. This Court "need not explore all the reasons that the State advances in justification of the [statute]. It is enough that a solid foundation for the [statute] can be found in the State's legitimate interest ...," *Dandridge v. Williams,* 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), here, for example, in preserving its ability to provide aid to dependent families. Indeed, there is no longer any question that a state classification should not be overturned on equal protection grounds " 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *Barry v. Barchi,* 443 U.S. 55, 67, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)).[8]

In what appears to be the only reported decision bearing on this precise issue, the New York Supreme Court Appellate Division, First Department, reached a similar conclusion in *Commissioner of Social Services v. Roberto G.,* 72 A.D.2d 9, 423 N.Y. S.2d 155 (1st Dep't 1979).[9]

The distinction between those respondents required to make payments to a support collection unit (whose children and/or spouse receive some kind of state aid) and those respondents required to make the payments directly does not deny the equal protection of the laws. Where the Legislature makes a classification premised upon social and economic considerations the classification is not unconstitutional if it has a rational basis. Here the classification is made between those receiving state aid and those who do not. The objective is to insure, so far as practicable, a recoupment of the state aid. Respondents not required to make payments to support collection units do not receive state aid. Moreover, since the determination of delinquency is being made by the support collection unit, an impartial governmental agency, there is an assurance or at least a substantial likelihood that the delinquency claim will be well founded and not designed for some other purposes. There is no danger of false or mistaken charges of non-payments by malicious or negligent dependents, as might occur with respect to those who make direct payments. It is plain that the legislative determination separately classifying those required to make support payments to a support collection unit does not constitute invidious discrimination denying the equal protection of the laws.

72 A.D.2d at 17, 423 N.Y.S.2d at 160–61 (citations omitted).

■ It is clear to this Court that § 49–b of the New York Personal Property Law survives plaintiff's equal protection assault. Since a rational relationship exists between the statute and a legitimate governmental interest, plaintiff has suffered no equal protection deprivation. Accordingly, defendants' motion for summary judgment with respect to the equal protection claim must be granted.

### 2. *Due process violation*

Plaintiff maintains that interception of his unemployment compensation by means of an income deduction order entered at the time of the original support order violated his due process rights by depriving him of his property without notice and an opportunity to be heard. Essentially, plaintiff argues that because his situation may have changed subsequent to entry of the origi-

---

**8.** Even where there is some evidence that a regulatory scheme is irrational, a denial of equal protection cannot be found where it appears that the issue is debatable. *United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938).

**9.** While not bound by the decision in *Roberto G.,* this Court is nonetheless in agreement with the equal protection reasoning applied in that case.

nal support order, effective notice and a prompt pre-deprivation hearing were required prior to enforcement of the income deduction order. While plaintiff concedes that N.Y.Pers.Prop.Law § 49–b(1)(b) permits interception only after a support payor has been provided with fifteen days notice, he argues that such notice is constitutionally insufficient since it fails to inform the potential garnishee of his right to seek a modification or a stay of the support order in the family court. The state defendants contend that the fifteen day notice is in fact sufficient and note that plaintiff was in fact advised of the availability of curative family court procedures.

■ The parties do not dispute that the interception of unemployment benefits deprived plaintiff of a protected property right and thereby implicated the due process guarantee of the fourteenth amendment. The central issue before this Court narrows, therefore, to a determination of whether the mechanism contemplated by § 49–b provides the due process protections which plaintiff must be afforded.

It is now a familiar principle that a "fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), but rather calls only for procedures tailored to the circumstances of par-

ticular situations. *Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). "The basic standard to be applied is one of reasonableness. 'The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane v. Central Hanover*, 339 U.S. at 314, 70 S.Ct. at 657).

Plaintiff places principal reliance for his contention on the significant decisions in *Finberg v. Sullivan*, 634 F.2d 50 (3d Cir. 1980) (en banc) [10] and *Deary v. Guardian Loan Co.*, 534 F.Supp. 1178 (S.D.N.Y. 1982),[11] both of which extended application of traditional due process protections to the context of post-judgment enforcement proceedings.

In *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924), the Supreme Court recognized that

> the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment.... [A]fter the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

*Id.* at 288, 45 S.Ct. at 62 (citations omitted). Were this the final word on the subject, there would be little merit indeed to plaintiff's contention that the post-judgment

---

10. *Finberg v. Sullivan* involved a challenge to Pennsylvania's post-judgment garnishment procedures, including provisions allowing for attachment and freezing of plaintiff's bank accounts during the pendency of the garnishment action. Essentially, the court held that a prompt post-seizure hearing was constitutionally required as was notice of the availability of exemptions (e.g., social security benefits) which might be claimed and the process for claiming those exemptions.

11. *Deary v. Guardian Loan Co.* involved a challenge to New York's procedures for restraint and execution on judgments. The court's primary concern was that plaintiffs be afforded notice of an impending execution in order to assert claims that certain property was exempt from legal process.

measures indicated here suffer constitutional infirmities. The holding of *Endicott-Johnson*, however, has undergone a substantial erosion in recent years at the hands of lower court decisions which perceive as constitutionally necessary a more enlightened approach to due process principles. *See, e.g., Deary v. Guardian Loan Co.*, 534 F.Supp. 1178, 1183 (S.D.N.Y.1982) (accepting plaintiffs' contention that *"Endicott-Johnson* should no longer be followed because it reflects a different era of due process jurisprudence which has been largely eclipsed by more recent due process decisions"); *see also Finberg v. Sullivan*, 634 F.2d 50, 56–57 (3d Cir.1980) (en banc); *Nelson v. Regan*, 560 F.Supp. 1101, 1107 (D.Conn.1983), *aff'd*, 731 F.2d 105 (2d Cir. 1984).[12]

The decisions in both *Deary* and *Finberg* reject as formalistic the *Endicott-Johnson* approach to due process protections and stress the importance of the Supreme Court's more recent opinions in cases involving pre-judgment seizures. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Both *Deary* and *Finberg* are particularly significant in their extension of the Supreme Court's due process approach in pre-judgment cases to cases involving due process attacks on post-judgment procedures.

In the pre-judgment context, the Supreme Court cases make clear the paramount importance of notice and an opportunity to be heard prior to the seizure of a debtor's property. While *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) explained that notice and a prior hearing are not absolutely necessary, it nonetheless established that the available procedures must afford the debtor adequate protection against erroneous

or arbitrary seizure. "The procedural protection is adequate if it represents a fair accommodation of the respective interests of creditor and debtor." *Finberg v. Sullivan*, 634 F.2d 50, 58 (3d Cir.1980) (en banc). In extending this reasoning to the post-judgment situation, the courts in both *Deary* and *Finberg* reasoned that obtaining a judgment merely established a debt and the right of a creditor to collect the debt. The judgment did not necessarily establish the propriety of particular property being used to satisfy the debt. Both courts viewed as essential that a debtor be afforded an opportunity to assert any defenses or claim particular exemptions prior to any seizure. As the *Deary* court explained:

> While notice of and an opportunity to be heard on the merits is directed to the question whether the debt is actually owed, the attempt to enforce the judgment raises the distinct issue whether particular property of the judgment debtor is available to satisfy the judgment. Thus, regardless of whether the debtor wishes to be heard on the merits or not, he or she has a distinct interest in being informed of and having an opportunity to challenge specific attempts to satisfy the judgment.

*Deary v. Guardian Loan Co.*, 534 F.Supp. 1178, 1185 (S.D.N.Y.1982).

Applying this analysis to the present case, plaintiff contends that the situation here is wholly analogous to those described in *Finberg* and *Deary*. Specifically, plaintiff argues that "the implementation of an income deduction order is to be considered a provisional remedy [and] [t]he fact that such an order was obtained many months earlier in conjunction with a support order and is triggered on a failure to make payments in an amount equivalent to three support payments does not alter the basic similarity to other provisional measures, as the person required to pay support might still defeat the right of the support collec-

---

12. Even defendants concede that "[r]ecent case law has significantly undercut the long established holding of the Supreme Court in *Endi-* *cott-Johnson* ...." Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 8–9.

tion unit to all or part of his income by raising any number of defenses not adjudicated in the earlier support proceeding including, as in the present case, his inability to pay at the time his income is about to be taken, [and] good cause for failure to make payments ...." Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 6–7.

Defendants, on the other hand, argue that there are significant differences between the present case and the *Finberg* and *Deary* cases with respect to both the procedures employed and the balance of competing interests involved. Regarding the competing interests at stake, a balance of which was recognized as a fundamental inquiry in both *Deary,* 534 F.Supp. at 1185–86, and *Finberg,* 634 F.2d at 58, defendants suggest the present situation is not controlled by the holdings in *Deary* and *Finberg.* Essentially, defendants argue that unlike those cases which dealt with "the more traditional debtor/creditor disputes, the protagonists being a consumer or small loan applicant versus a commercial corporation seeking to enforce a debt," Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 9, this case calls into play the substantial government interest in child support proceedings and public assistance programs. Defendants also belittle plaintiff's interest in unemployment benefits, noting that eligibility for unemployment insurance is not based on any determination of need and that, therefore, no conclusions can be drawn as to the effect of any interception of such benefits. *See Commissioner of Social Services v. Roberto G.,* 72 A.D.2d 9, 14, 423 N.Y.S.2d 155, 159 (1st Dep't 1979) ("it is clear that the scales favor the governmental interest. Respondent's significant interest in not having his wages garnisheed even to pay his acknowledged marital and parental support obligations must be weighed against the compelling interest of the federal, state and local governments, acting through the Commissioner, in partially recouping welfare payments made to those in need from those obligated to support them"). *Compare*

*with Finberg v. Sullivan,* 634 F.2d at 58 (debtor's interest in access to bank accounts containing attachment-exempt social security benefits is "very compelling"); *Deary v. Guardian Loan Co.,* 534 F.Supp. at 1186 (judgment debtors' interest in possibly exempt assets is compelling where exemptions asserted "are designed to protect their means of purchasing the basic necessities of life"). Defendants simply choose to ignore the fact that in this case, plaintiff's subsistence was entirely dependent upon receipt of his unemployment benefits. *See generally Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976) ("our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) ("the crucial factor in this context—a factor not present in the case of ... virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits" (emphasis in original)).

Next, defendants contend that unlike *Deary* and *Finberg,* where the challenged procedures provided for no notice prior to attachment of the debtors' property, § 49–b permits income deduction only after the delinquent support payor has been given at least fifteen days notice of the impending interception. Defendants suggest that that fifteen day period provided ample time for plaintiff to have applied to the family court for a modification of the original support order.

Defendants also seek to distinguish *Deary* and *Finberg* on factual grounds, contending that the property at issue in those cases involved, in the main, exempt social security funds, and the fact that an exemption could be claimed was what the courts viewed as an important right to be protected. Here, defendants argue, plaintiff cannot assert any colorable claim to any exemption of unemployment insurance.[13]

Finally, defendants note that a fundamental consideration of the *Deary* and *Finberg* courts was the fact that the underlying judgments on which the seizures were based considered only the amount of the debt owed without reference to the availability of any particular enforcement proceeding. *See Finberg*, 634 F.2d at 58; *Deary*, 534 F.Supp. at 1186. In distinct contrast, defendants note that § 448 of the Family Court Act specifically authorizes the family court to enter an income deduction order in accordance with § 49–b in any support proceeding.[14] Contrary to the concern in *Deary* that the judgment does not reflect "the right to use any particular procedure or to satisfy the judgment with any particular property," defendants contend that the family court support order on its face directs the nature of the enforcement remedy and the property to be seized.

Defendants conclude, therefore, that any dispute that a respondent may have as to what enforcement remedy should be pursued or as to what property exemptions a respondent may be entitled, are open for adjudication in the support proceeding itself. *See Bigness v. Obit*, 112 Misc.2d 1078, 448 N.Y.S.2d 120 (N.Y.Fam.Ct. Onondaga County 1982); *Liedka v. Liedka*, 101 Misc.2d 305, 423 N.Y.S.2d 788 (N.Y. Fam.Ct. Onondaga County 1979).

In short, defendants' position is that § 49–b provides adequate due process protections by allowing a respondent fifteen days notification prior to any income deduction and by providing for an adequate opportunity to be heard both in the original support proceeding and by way of an application to the family court for a modification of the support order once a respondent is advised of the impending interception.

Plaintiff's challenge, however, focuses precisely on the inadequacy of these mechanisms. First, plaintiff asserts that the opportunity to be heard at the original support proceeding is essentially meaningless with respect to a support enforcement order that will issue only in the future. More importantly, plaintiff contends that the fifteen day provision is simply insufficient since it is nearly impossible to procure any

---

**13.** Defendants' reading of the holdings in *Deary* and *Finberg* is unnecessarily restrictive. While both courts were undeniably concerned with the fact that attachments could be effected upon exempt property, the principle to be discerned from those opinions was the right of the debtors to assert what amounted to defenses to the attachments. The particular defenses before those courts simply happened to be claims of exemption. Here, the defense which presumably would be raised would be a change of circumstances warranting either a reduction or modification or stay of the original support order. The right to challenge the impending attachment, here, the income deduction, is not predicated so much on the nature of the defense that will be raised, e.g., a claimed exemption, as on the right to raise any defense generally. As were the courts in both *Deary* and *Finberg*, this Court is guided by the principles set forth in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). There, the Supreme Court determined the Con-

stitution requires that prior to a utility company's termination of services the utility must provide "(i) notice informing the customer not only of the possibility of termination but of a procedure for challenging a disputed bill, and (ii) '[an] established [procedure] for resolution of disputes' or some specified avenue of relief for customers who 'dispute the existence of the liability.'" 436 U.S. at 12, 98 S.Ct. at 1561 (citations omitted). Accordingly, the fact that plaintiff here, unlike the plaintiffs in *Deary* and *Finberg*, can make no claim to any exemption is of little consequence.

**14.** Section 448 of the Family Court Act provides:
The family court is hereby authorized to enter an order with respect to an income deduction, in accordance with the provisions of section forty-nine-b of the personal property law, in any support proceeding under the provisions of article four, five, or five-A of this chapter.
N.Y.Fam.Ct.Act § 448 (McKinney 1983).

type of relief from the family court in that short time span.[15] *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (due process requires opportunity to be heard "at a meaningful time"). Finally, plaintiff argues that there is no effective mechanism by which he and others are made aware of the opportunity to seek relief from the family court.

Notwithstanding plaintiff's broad assault upon the claimed infirmities of § 49–b,[16] this Court finds no need to reach plaintiff's constitutional challenge to the statutory scheme or to decide the merits of the state's somewhat persuasive defense.[17]

**15.** Plaintiff points to the fact that while his petition for modification was filed on May 11, 1982, and originally returnable on June 1, 1982, "crowded Family Court calendars" and numerous adjournments prevented his petition from being acted upon until a full nine months later.

**16.** The New York courts already have rejected the argument that § 49–b violates due process requirements. *See Commissioner of Social Services v. Roberto G.,* 72 A.D.2d 9, 16–18, 423 N.Y.S.2d 155, 158–60 (1st Dep't 1979).

**17.** It is interesting, however, to note the extremely relevant decision of Judge Burns of the District of Connecticut in *Nelson v. Regan,* 560 F.Supp. 1101 (D.Conn.1983), recently affirmed by the Second Circuit, *Nelson v. Regan,* 731 F.2d 105 (2d Cir.1984). That case involved a challenge to a similar federal-state intercept program authorized by the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, §§ 2331, 2332, 95 Stat. 860–63, under which federal income tax refunds were permitted to be transferred to the state to the extent of a taxpayer's past due support obligations. Judge Burns summarized the program's operation as follows:

In brief, the state agency in charge of implementing the intercept program, the Child Support Division (CSD) of the DHR, certified the names of individuals delinquent in their support obligations to the United States Treasury. Only later were the individuals notified that their tax refunds may be intercepted to offset delinquent support obligations assigned to the State and that questions about the individuals' support obligations could be addressed to a Family Relations Officer or the CSD. They were not told the claimed amount of their obligations or the fact that their names had already been certified to the IRS. Nor did the notice indicate the available defenses to the interception of tax refunds or the possibility that the refund of a non-obligated spouse in the case of a joint tax return might be intercepted.

The notice did not provide information about a procedure to challenge a refund offset. The two agencies identified in the notice appear to be available to answer questions, but not to provide a regular procedure in which to remedy errors. Indeed, Family Relations Officers have no authority to delete names from the list certified to the IRS. CSD, by contrast, may correct the list but has played a limited role in handling complaints.

A second notice was sent by the IRS to the taxpayer and the taxpayer's spouse, in the case of a joint return, after the refund had been intercepted. The notice advised the taxpayer of the amount of the overpayment, the amount intercepted and the fact that the intercepted overpayment had been paid to the State. The notice also advised the taxpayer that any questions about the obligation should be addressed to the CSD.

No other notices were sent before the filing of this suit. No provisions were made for regular procedures in which to challenge the State's claim to a refund.

560 F.Supp. at 1106 (footnotes omitted). The particular statute is contained in 42 U.S.C. § 664(a) which provides:

Upon receiving notice from a State agency administering a plan approved under this part that a named individual owes past-due support which has been assigned to such State pursuant to section 602(a)(26) of this title, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such amount is payable, he shall withhold from such refunds an amount equal to the past-due support, and pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 657(b)(3) of this title.

With respect to the notice component of due process, Judge Burns concluded that "[b]oth the pre-intercept notice sent by the DHR and the post-intercept notice sent by the IRS fail[ed] to meet" constitutional standards. 560 F.Supp. at 1107. In particular, she noted that neither notice "mentions the possible defenses an individual might have to the interception of tax refunds or the availability of regular procedures in which to challenge the offset.... A clear and detailed predeprivation notification, specifying the possible defenses and the procedures for asserting those defenses, is necessary to afford due process protection to these individuals." *Id.* (footnote omitted).

With respect to the second component of due process, that plaintiffs be afforded an opportunity to be heard at a meaningful time and in a meaningful manner, *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976), Judge Burns concluded that a predepri-

Assuming the constitutional validity of the statute's procedural protections, the conclusion is inescapable that, as a factual matter, plaintiff was denied due process. On the basis of the record before it, this Court concludes that defendants have failed properly to comply with the strictures of § 49–b and thereby have deprived plaintiff of any effective notice or right to be heard.

Plaintiff does not dispute that § 49–b provides for prior notice by the state of its intention to effect an income deduction order at least fifteen days before the order is forwarded to a respondent's employer.[18] Indeed, plaintiff concedes that he did in fact receive such notice on January 14, 1982. Second Amended Complaint, ¶ 22.[19] Plaintiff's position narrows, rather, to his contention that the notice with which he was provided was constitutionally defective in two substantive respects. First, plaintiff argues that because the notice which he was sent failed to advise him of his right to petition the family court for a modification of the original support order it was of little worth. Second, plaintiff advances the argument that the fifteen day provision is simply insufficient inasmuch as it does not allow a respondent sufficient time in which to apply to the family court for appropriate relief.[20] *But see Commissioner of Social Services v. Roberto G.,* 72 A.D.2d 9, 14, 423 N.Y.S.2d 155, 159 (1st Dep't 1979) ("Although the statute does not provide for application to the court for modification or to stay the enforcement of the order, it is plain that such right exists. The Family Court judge disposed of this by asserting that the calendar congestion in the Family Court was such that an application to the court for modification or to establish that the delinquency did not exist would not likely be heard until after the payroll deduction order had been served. This does not demonstrate that the statute is unconstitutional but rather suggests adoption of a procedure in the Family Court to insure that the deduction order is

vation hearing was constitutionally required. Acknowledging that the state did possess a substantial interest in receiving its share of the tax refund and that the provision of hearings would impose a fiscal and administrative burden on the government, Judge Burns nonetheless found the individual's interest to be great enough to justify more expansive protections, 560 F.Supp. at 1108–09, and held that defendants "must ... provide a predeprivation administrative review before an official with the authority to remove names from the list certified to the IRS. *Id.* at 1111. *See also Sorenson v. Secretary of the Treasury,* 557 F.Supp. 729, 736–38 (W.D.Wash. 1982) (notice, but not hearing, required), *appeal docketed,* No. 83–3694 (9th Cir. Feb. 10, 1984).

In light of its conclusion that the constitutionality of § 49–b as written need not be determined here, this Court makes no judgment with respect to the applicability of the holding in *Nelson v. Regan.* It is to be noted, however, that unlike the notification scheme contemplated by § 49–b of the New York Personal Property Law, the tax intercept program considered by Judge Burns did not provide for any notice to individuals *prior* to the commencement of the interception process. *See* 560 F.Supp. at 1106 ("only later were the individuals notified that their tax refunds may be intercepted ....").

**18.** Of course, § 49–b encompasses more than simply employers. By its terms, income deduction orders may be directed to a respondent's "employer, future employer, former employer, the auditor, comptroller, or disbursing officer of any pension fund, the state of New York or any political subdivision thereof, or the United States ...." N.Y.Pers.Prop.Law § 49–b(1)(b) (McKinney Supp.1983–1984).

**19.** Interestingly, although not mentioned by either party, it appears that plaintiff had notice greatly in excess of the statutorily required 15 days. While plaintiff was notified of his delinquency and the impending income deduction order on January 14, 1982, it was not until March 16, 1982, more than two months later, that a determination of missed payments triggering an income deduction was forwarded to the New York State Unemployment Insurance Office. *See* Second Amended Complaint, ¶¶ 22, 24.

**20.** In the specific factual context of this case, this Court finds any such claim to be disingenuous. Regardless of whether 15 days, as an abstract proposition, is found to be sufficient time in which to invoke the equitable powers of the family court, it is clear that plaintiff had available nearly two months. *See supra* note 19. Indeed, as evidenced by plaintiff's own experiences, two months would seem ample time in which to obtain relief from the family court. *See* Second Amended Complaint, ¶ 31 (petition filed on May 11, 1982 and made returnable on June 1, 1982; adjourned to June 3rd and then June 4th; hearing ultimately held on July 20, 1982).

not served by the social service agency while a proceeding for modification is being processed in the Family Court").

Essentially, plaintiff would have this Court require that notice provided under § 49–b include notice of the availability of family court relief. The Supreme Court has, it would seem, established the validity of plaintiff's position. In *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the Court determined that a notice of termination of utility service was constitutionally inadequate because it did not advise the customer of the availability of a procedure for contesting the proposed termination. It noted that " '[a]n elementary and fundamental requirement of due process ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action *and afford them an opportunity to present their objections.*' " 436 U.S. at 13, 98 S.Ct. at 1562 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)) (emphasis added). To apprise respondents only of the action taken or contemplated and not of the availability of procedures by which to object would represent a "restrictive view of the process due in the context of this case [and] would erect an artificial barrier between the notice and hearing components of the constitutional guarantee of Due Process." 436 U.S. at 14 n. 15, 98 S.Ct. at 1563 n. 15. *See also Nelson v. Regan*, 560 F.Supp. 1101, 1111 (D.Conn.1983), *aff'd*, 731 F.2d 105 (2d Cir.1984). There is no doubt that the "conveyance of this information would not place a great burden on the state," *Finberg v. Sullivan*, 634 F.2d at 62,

as it could easily be included on the form letter already provided to respondents. *See Sorenson v. Secretary of the Treasury*, 557 F.Supp. 729, 738 (W.D.Wash. 1982), *appeal docketed*, No. 83–3694 (9th Cir. Feb. 10, 1984). "The salutory [sic] value of notice in this context is self-evident—it would enable [a respondent] to assert his or her [defenses] and thus prevent or correct" an unjustified income deduction "which would otherwise have the effect of depriving the [respondent] of property which may be necessary to meet the basic necessities of life." *Deary v. Guardian Loan Co.*, 534 F.Supp. at 1187.

Defendants take the position that such notice is, as a matter of course, provided orally to all respondents who contact the SCU after receipt of the notice of delinquency. In this particular case, it will be recalled that upon receipt of his notice of delinquency, plaintiff telephone SCU Investigator D'Alessandro, apparently in an attempt to resolve any problems. The D'Alessandro affidavit states unequivocally that plaintiff "was told to contact the Court and request a modification of the Order." D'Alessandro affidavit, ¶ 9.[21] According to defendants, such advice "was in accord with the policy of the local support unit." Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 5; *see also* Deposition of Roger Taft, Coordinator of Albany County Child Support Enforcement Unit, at 15. Plaintiff's exhibit 6, Memorandum from Roger Taft to SCU Investigators dated April 16, 1981 "We *can* get deductions on U.I.B. [Unemployment Insurance Benefits]. If there is a 49–B [sic] on the respon-

---

**21.** Although this fact is disputed, *see* Second Amended Complaint, ¶ 23, plaintiff contends that "[e]ven if Mr. D'Alessandro delivered the disputed message, Mr. Diotte didn't know he received it, and certainly it would have been in his interests [sic] to act to seek a modification, as he did months later. Surely, a governmental agency that wishes to be sure it provides notice of rights to defeat the income execution could include that information in its 15 day required written notice, rather than leaving it to the discretion of investigators who may not deliver the information or who may not make them-

selves understood on this issue." Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at 10. Although normally, a dispute over a factual question such as this would preclude a grant of summary judgment, this Court finds that this particular factual question is not a material one. As will be discussed below, whether or not Investigator D'Alessandro did indeed advise plaintiff of his right to go to family court is largely irrelevant to the more fundamental question of the precise content of that notice.

dents' court order *make sure* that he is sent a letter giving him 15 days in which to respond before enacting the 49–B [sic]. If the respondent claims he can't make payments tell him to file for a modification." (emphasis in original).

Plaintiff, however construes the Taft deposition somewhat differently and suggests that it establishes only an Albany County policy under which each investigator dealing with a support payor is given discretion whether or not to inform the support payor to seek a modification. Plaintiff also points to a statement appended to the deposition, *see* Fed.R.Civ.P. 30(e), of Meldon Kelsey, Director of the Office of Child Support Enforcement, New York State Department of Social Services, that "[t]here is no notice sent to the persons responsible for support payments advising them to go to court and seek a modification of the order .... All that the law requires is (1) a determination that the respondent has missed the specified payments, (2) a fifteen day notice of such determination and (3) service of copies of the support order and determination upon the employer." This Court finds plaintiff's interpretation unpersuasive. It is quite clear from the Taft deposition that a distinct policy of advising respondents to seek family court relief was in existence. The only area in which investigators are advised to use their discretion is where a respondent claims he is able to make partial payments. In those cases, the investigator may exercise his discretion whether or not to activate a deduction order. There appears to be no discretion concerning whether or not to recommend a family court application as the Taft deposition indicates that such notice is *required. See* Taft deposition at 15–16. With respect to the statement by Meldon Kelsey, it is important to note that the context of that statement concerned the actual written notice which is provided. There is no indication by Mr. Kelsey that oral notice is not provided, notwithstanding

his view that the written notice need not mention the availability of family court procedures.

Nonetheless, even assuming the truth of the State's claim, a careful examination of the actual notice with which plaintiff was provided persuades this Court that plaintiff was in fact deprived of appropriate due process protections. Although much of the parties' focus has been on the generic income deduction order, the present case deals more specifically with an interception of *unemployment benefits.* Because plaintiff never was informed that *these* benefits were to be taken from him, this Court has little difficulty concluding that plaintiff was deprived of notice "reasonably calculated, under all the circumstances, to apprise" him of the specific seizure.

The critical inquiry of course concerns the content of the actual notice which was sent to plaintiff. The Court's task is made somewhat more difficult since neither party has seen fit to include with its moving papers a copy of that notice.[22] Nonetheless, the parties seem to agree as to what that notice contained and plaintiff has provided a variety of form letters which in all probability are representative of the actual notice which was used here. Since the parties do not dispute the essential makeup of the notice provided, summary judgment is entirely proper.

Paragraph 22 of plaintiff's second amended complaint summarizes the notice which plaintiff received.

> On or about January 14, 1982, the Albany County Support Collection Unit sent Plaintiff CHARLES F. DIOTTE a notice which purports to be pursuant to PPL Section 49–b advising that "an automatic *wage deduction* will be imposed on your *salary* within fifteen (15) days if you fail to either pay your delinquency or notify us of the reason for your failure to comply." [23]

**22.** *But see infra* note 23.

**23.** With his moving papers, plaintiff has included a number of exhibits which relate to the Department of Social Services' notification pro-

cedures. Among these documents are copies of two form letters, similar in content, which apparently are used to notify respondents of their delinquencies and to advise them of impending

(emphasis added). After receiving that notice, plaintiff telephoned Investigator D'Alessandro of the SCU and informed him that he was unemployed and that his sole income consisted of unemployment benefits. There is no indication that Investigator D'Alessandro ever advised plaintiff that these payments too would be subject to interception. As suggested by plaintiff, "[t]he clear import of Investigator D'Alessandro's telephone statements as an 'official' of the court was that he intended to implement an automatic *wage deduction* when plaintiff returned to work." Second Amended Complaint, ¶ 23 (emphasis added). There is thus simply no question that plaintiff never was advised that his unemployment benefits would be withheld as an offset against his past due support payments. Whatever other deficiencies may inhere in § 49–b's notification procedures, it is beyond question that on the facts of this case plaintiff was left unaware of what was soon to happen. While it is true that " '[n]otice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop,' " *Soberal-Perez v. Heckler,* 717 F.2d 36, 43 (2d Cir.1983) (quoting *Commonwealth v. Olivo,* 369 Mass. 62, 69, 337 N.E.2d 904, 909 (1975)), plaintiff did not remain silent with respect to the subject of unemployment compensation in the course of his conversation with Investigator D'Alessandro and may therefore be said to have launched such reasonable inquiry. The fact that D'Alessandro never supplemented the written notice informing plaintiff of the availability of unemployment benefits in satisfaction of the delinquency no doubt served to lull plaintiff into what proved only later to have been a false sense of complacency. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the [respondent] might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Not having been made aware that he stood to forfeit unemployment compensation, plaintiff cannot fairly be said to have received adequate notice.

income deductions. The language of both letters tracks that contained in plaintiff's second amended complaint and this Court has been given no reason to believe that one of these two letters was not the notice sent to plaintiff. Indeed, attached to the affidavit of SCU Investigator D'Alessandro, submitted months before the making of these motions, is what purports to be an actual copy of the letter sent Mr. Diotte. That letter is identical in content to that described below as Letter 1.

The text of these two letters provides as follows:

Letter 1

Dear _____:

Our records show that you have missed three (3) [sic] payments of your current court order. In compliance of [sic] Section 49–b of the Personal Property Law an automatic <u>wage deduction</u> will be imposed on your <u>salary</u> within fifteen (15) days if you fail to either pay your delinquency or notify us of the reason for your failure to comply. Telephone (518) 471–5710.

<u>On all payments, please include SCU #</u> _____.

Sincerely,<br>Support Investigator

Plaintiff's exhibit 8 (emphasis added).

Letter 2

Dear:

Our records indicate that you have failed to make _____ child support payments in accordance with the above court order which were due on _____ and _____. Personal Property Laws [sic] § 49–b(1) requires that you pay the total amount due within 15 days of receipt of this notice. If you fail to do so, your <u>employer</u> will be served with an order requiring him to deduct from your <u>wages</u> an amount equal to your court ordered support obligation.

You have the right to seek the advice of an attorney. Such advice should be sought prior to the execution of the <u>wage</u> deduction. Please note that your <u>employer</u> can not [sic] use the initiation of the <u>wage deduction</u> as grounds for your dismissal. Such an action is contrary to Section 5252 of the Civil Practice Laws [sic] and Rules (CPLR).

Please remit the above amount within 15 days to avoid imposition of this <u>wage deduction</u> remedy.

Sincerely

Plaintiff's exhibit 2, attachment 4 (emphasis added). According to the deposition testimony of Roger Taft, Letter 1 is the form of notice currently used by SCU. Taft deposition at 14–15.

The "right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id.* at 314, 70 S.Ct. at 657. Accordingly, interception of plaintiff's unemployment benefits was affected without appropriate due process protection and these defendants are liable for any damages which may be found to have flowed therefrom.

## V

The holding in this case is a narrow one. Since plaintiff is no longer unemployed, injunctive and declaratory relief are not available and plaintiff is entitled only to those damages which he incurred as a result of the unconstitutional actions taken by defendants. The Court renders no decision regarding the constitutionality of § 49–b but concludes only that on the unique facts of this case, plaintiff was deprived of adequate notice and consequently an opportunity to be heard prior to being deprived of his property. Accordingly, plaintiff's motion for partial summary judgment is granted as against all defendants with respect to his due process claim only and is denied in all other respects. The state defendants' cross-motion for summary judgment is granted with respect to the federal and state statutory claims as well as with respect to the equal protection challenge. The state defendants' motion is denied in all other respects.

It is so Ordered.